ANGELA P. POWERS, PLAINTIFF v. LOWELL GARY POWERS; DEFENDANT IN THE MATTERS OF: ANDREA Q. POWERS (DOB: 10/31/81), KAYLA D. POWERS (DOB: 09/08/85), PEARSON DYLAN POWERS (DOB: 06/27/90), MICHAEL R. FINLEY (DOB: 07/12/93)

No. COA97-1146

(Filed 7 July 1998)

1. **Parent and Child— abused juveniles—sufficiency of evidence**

    There was sufficient competent evidence to support the conclusion of the trial court that two children were abused juveniles within the meaning of N.C.G.S. § 7A-517(1)(d), but there were no findings regarding a third child having sustained "severe emotional damage" and the determination that he is an abused juvenile was reversed.

2. **Parent and Child— neglected juveniles—sufficiency of evidence**

    There was clear and convincing evidence to support the conclusion of the trial court that three children were neglected juveniles within the meaning of N.C.G.S. § 7A-517(21) where the mother, who had custody, has a severe substance abuse problem involving alcohol, she has driven an automobile while impaired due to alcohol with her minor children as passengers, she becomes intoxicated at home to the point of falling down and being unable to care for her younger children, and her drinking has contributed to the older children's emotional problems.

3. **Evidence— alco-sensor test—admissibility**

    There was no prejudicial error in a juvenile abuse and neglect adjudication where the trial court admitted alco-sensor test

POWERS v. POWERS

[130 N.C. App. 37 (1998)]

results even though N.C.G.S. § 20-16.3(d) provides that such results might be introduced only to determine whether an alleged impairment was caused by a substance other than alcohol and that exception was not relevant to this case. In light of other evidence showing that the mother had an alcohol problem, any error was not prejudicial.

**4. Evidence— intoxilyzer—required foundation for introduction**

There was no prejudice in a juvenile abuse and neglect adjudication where the results of intoxilyzer tests on the mother were admitted even though it was unknown whether the officer who administered the test possessed a valid permit or whether he followed proper procedure. In light of the other evidence showing that the mother had an alcohol problem, any error was not prejudicial.

**5. Parent and Child— neglect and abuse adjudication—post-petition occurrences—admissibility**

There was no error in a juvenile abuse and neglect adjudication where the trial court admitted evidence of post-petition occurrences. The post-petition occurrences were admissible for the disposition stage and the trial court held the adjudication and disposition hearings at the same time. It is presumed that the trial court disregarded the post-petition occurrences for the adjudication portion of the hearing and considered the evidence only for the disposition stage.

Appeal by Angela P. Powers, Lowell Gary Powers, and Herman Finley from judgment entered in open court on 7 February 1997 and signed 18 April 1997 by Judge Edgar B. Gregory in Ashe County District Court. Heard in the Court of Appeals 29 April 1998.

*Grier J. Hurley, for Ashe County Department of Social Services, petitioner appellee.*

*John W. Gambill, for Lowell Gary Powers, respondent appellant.*

*Kilby, Hodges and Hurley, by Sherrie R. Hodges, for Herman Finley, respondent appellant.*

*Don Willey, for Angela Powers, respondent appellant.*

HORTON, Judge.

Angela P. Powers ("Angela") and Lowell Gary Powers ("Lowell") were married on 13 December 1978 and separated on 17 November

1989. Three children were born to their marriage: Andrea Q. Powers, born 31 October 1981; Kayla D. Powers, born 8 September 1985; and Pearson Dylan Powers, born 27 June 1990 (collectively "Powers children"). The Powers children lived with their mother after the separation of their parents. Angela began living with Herman Finley ("Finley") about 6 months after her separation from Lowell. Michael R. Finley ("Michael") was born to Angela and Herman on 12 July 1993.

Angela filed an action in 1993 seeking custody of the Powers children. A hearing was held in September 1993. The trial court found that both Angela and Lowell were disabled and were receiving Social Security Disability Insurance benefits. The court further found that Angela was convicted of driving while impaired in 1989, and the charge involved a wreck with both Andrea and Kayla in the automobile at the time of the accident. In addition, Angela had been the victim of domestic violence by Lowell during their marriage.

At the time of the custody hearing, Angela was living with Finley, who was also disabled and receiving Social Security Disability Insurance benefits. Finley had been convicted of various drug-related offenses in 1984 and received an active two-year prison sentence. After a full hearing, by order dated 15 September 1993, the district court awarded custody of the Powers children to the mother on certain specific conditions, including that: (1) she remain absolutely sober for 6 months, and possess no alcoholic beverages during that time; (2) she participate in a substance abuse assessment and comply with the recommended treatment program; and (3) Finley move out of her residence and remain out for six months. Lowell was awarded specified visitation privileges with the children. Neither party appealed from the entry of that order.

Since February 1990, twenty-four reports about the care of the Powers children were made to the Ashe County Department of Social Services ("DSS"). Seventeen reports were directed against Angela, and seven of those reports were substantiated based on her lack of supervision, alcoholism and emotional abuse or neglect. Two of the four reports against Lowell were substantiated, based on physical abuse of Pearson and emotional abuse of all the Powers children. None of the three reports against Finley were substantiated.

On 8 May 1996, DSS filed juvenile petitions alleging that all four of Angela's children were abused and neglected juveniles. As to Andrea and Kayla, the petitions alleged that: Angela was unable to care for her children due to her alcoholism; Lowell was uncoopera-

tive in arranging alternate care for the children; Angela and Lowell were engaged in a continual battle over custody of the children, resulting in emotional damage to the children; Lowell used the children to retaliate against the mother; and Andrea and Kayla were receiving treatment for emotional damage caused by their parents' actions. Allegations in the petition involving Pearson were similar, except it was not alleged that Pearson was receiving treatment for emotional problems. It was alleged, however, that Lowell had used excessive physical discipline on Pearson, resulting in bruising on his face in the shape of a hand. As to Michael, in addition to allegations about his mother's alcohol problems, it was alleged that he was neglected because he was living in an environment injurious to his welfare.

On 2 May 1996, Lowell filed a motion in the custody case alleging that: Angela Powers had continued to drink in the presence of the children in violation of the court's orders; Angela was placed in the local detoxification center on 12 April 1996; Angela had not married Finley, but had continued to reside with him; and Finley uses alcohol and intravenous drugs in the presence of the children. Lowell asked that custody of the Powers children be placed with him.

Pending the hearing of the juvenile petitions, the trial court awarded DSS legal custody of the children, while Angela retained physical custody of the four children. On 3 July 1996, an emergency nonsecure order was issued placing the children in the physical custody of DSS, due to new petitions alleging that Angela was intoxicated while caring for her children on that same day. The new petitions were filed on 5 July 1996, and amended petitions were filed on 9 July 1996.

A seven-day custody hearing was held on 8 July 1996, as the result of which DSS was ordered to do a home study of Marsha Owens, the half-sister of the Powers children. Based on the home study, the Powers children were placed in the home of Marsha Owens on 2 August 1996. The four juvenile petitions and the motion in the custody case were consolidated for hearing. Hearings were held on 27 September 1996, 4 November 1996, 3 January 1997, and 7 February 1997.

At the 7 February 1997 hearing, the Powers children were adjudicated to be abused and neglected, and Michael was adjudicated to be neglected. The legal and physical custody of all four children was placed with DSS. Angela, Lowell, and Herman all appeal.

Angela and Lowell contend on appeal that: (I) there was insufficient clear and convincing evidence from which the trial court could find the Powers children to be abused and neglected, and further, that the petitions should have been dismissed. Angela also contends that: (II) the admission of certain evidence relating to her alleged alcohol abuse was reversible and prejudicial error. Herman contends that: (III) DSS did not offer clear and convincing evidence to support a finding that Michael was a neglected juvenile.

I.

[1] Petitioner DSS contends the Powers children are abused juveniles within the meaning of N.C. Gen. Stat. § 7A-517(1)(d) (Cum. Supp. 1997) because their parents, Angela and Lowell, have created or allowed to be created "serious emotional damage to the juvenile[s]" due to the parents' long-standing, acrimonious marital dispute. The parents contend that none of the Powers children have suffered "serious emotional damage" within the meaning of the statute.

A psychologist testified that Andrea had a diagnosis of "Chronic Adjustment Disorder due to her symptoms of defiance, sadness, depression and suicidal thoughts." In the expert opinion of the witness, Andrea's condition was "caused from the constant conflict between the parents and the minor child having witnessed physical and verbal confrontations between the mother, Angela Powers, and the father, Lowell Powers." A second psychologist testified that she diagnosed Kayla with "Chronic Adjustment Disorder," which she felt was "clearly linked to the family situation in that Kayla has gastric distress with increased family conflict and arguments between parents." Kayla's school counselor testified about the child becoming physically sick when her father would telephone her at school. In its detailed order relating to Pearson, the trial court recited its findings with regard to the conditions from which Andrea and Kayla were suffering, and concluded that Pearson was also an abused child since his parents "created or allowed to be created serious emotional damage" to him.

N.C. Gen. Stat. § 7A-517(1)(d) defines "abused juveniles" to be juveniles less than 18 years of age whose parent

[c]reates or allows to be created serious emotional damage to the juvenile. Serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal or aggressive behavior toward himself or others . . . .

There are ample findings to support the trial court's conclusions that Andrea and Kayla are abused juveniles within the above definition. Andrea exhibited symptoms of depression and had entertained suicidal thoughts. In the seventh grade, Andrea was described as "energetic, bubbly and the class clown." She was also a cheerleader. During the eighth grade, however, as the conflict between her parents worsened, Andrea quit cheerleading, became less involved in school activities, was "no longer outgoing and was more reserved." Her school counselor testified that Andrea "did not smile and seemed to lack the confidence in herself that she had in the 7th grade." In addition to the testimony of her school counselor, Kayla testified about the severe anxiety her parents' actions caused her. She testified that her stomach hurt "when she got upset and that her parents fighting caused it to hurt." She further testified that when she became upset, she would sometimes get physically sick on her stomach in the classroom. At the time of the hearing, Kayla had been taking Zantac to "make her stomach feel better." Kayla also testified that, since her removal from her mother's home, her stomach does not hurt as often. The findings of the trial court are based on competent evidence and support the conclusions that both Andrea and Kayla are abused juveniles within the meaning of N.C. Gen. Stat. § 7A-517(1)(d). There are, however, no findings with regard to Pearson having sustained "severe emotional damage" and the determination that he is an abused juvenile must be reversed.

[2] As to the allegations that the children are neglected, the petitioner's allegations center around Angela's continuing alcohol problem. The contention is that the children are neglected juveniles because they live in an environment injurious to their welfare. N.C. Gen. Stat. § 7A-517(21). When the trial court awarded custody of the Powers children to Angela in 1993, the award was conditioned on the mother remaining "absolutely sober for . . . six months" and not allowing any alcoholic beverages in the home. The court also directed Angela to have a substance abuse assessment and comply with any treatment ordered for her. The mother testified at the 1993 custody hearing that she had been convicted of driving while impaired in 1989. That case involved a "wreck situation" and Andrea and Kayla were in the car with her at that time.

In 1994, Angela was again arrested for driving while impaired. Pearson and Michael were in the car with her on that occasion. In November of 1995, Angela completed a 28-day substance abuse treatment program. In March 1996, Angela spent seven days in the Wilkes

**POWERS v. POWERS**

[130 N.C. App. 37 (1998)]

County Detoxification Unit ("Detox"). On 12 April 1996, a social worker was in the home occupied by Angela and the children, and found beer cans in the trash can. Angela was visibly intoxicated, had alcohol on her breath, and had slurred heavy speech. Angela was transported to Detox and again completed the 28-day treatment program. On 3 July 1996, while these petitions were pending, Angela was intoxicated while caring for Pearson and Michael, causing the children to be removed from her custody and additional petitions to be filed in this matter.

The trial court found that Andrea

had seen her mother drink alcohol and become intoxicated in the past. That she sometimes had to care for her younger siblings and change diapers when her mother was intoxicated. That her mother is "like a whole different person" when she is drinking. Sometimes she is nice but almost always they fought. That her mother had driven a car while drinking alcohol with she and her siblings in the car. Andrea had on numerous occasions (but less than 10 times) had attempted to take an alcoholic beverage from her mother's hand. During one attempt her mother fell to the ground.

The court further found that during the testimony of Kayla, the child

began to cry when she described seeing her mother on December 13, 1996 with Tina Crumpton and said that she knew her mother had been drinking alcohol because she had seen her mother drunk and could tell her mother had been drinking by the way she looked and the way she talked. When she and Andrea told their mother she should not have been drinking, her mother denied drinking but Kayla did not believe her.

Kayla testified to having seen her mother drunk to the point she could not walk.

There is ample evidence in this record that Angela has a severe substance abuse problem involving alcohol, that she has driven an automobile while impaired due to alcohol and while her minor children were passengers, that she becomes intoxicated at home to the point of literally falling down and becoming unable to care for her younger children, and that her drinking has contributed to the emotional problems from which the older children suffer. We conclude that there is clear and convincing evidence to support the conclusion

of the trial court that the Powers children are neglected juveniles within the meaning of N.C. Gen. Stat. § 7A-517(21).

## II.

Angela contends, however, that the trial court made its findings and conclusions based at least in part on inadmissible evidence. She contends the court received evidence of her post-petition "bad acts," specifically, her continued alcohol consumption. She argues that the court's action violated her due process rights since she was not adequately put on notice of the allegations in the case. She further argues that the trial court allowed testimony over her objection as to the results of alco-sensor and intoxilyzer tests.

The initial petitions in each of the four cases involved here alleged that Angela was an alcoholic, that she has been involuntarily committed twice for alcohol abuse, that she becomes intoxicated and unable to care for the children, and that the older children then have to care for the younger children due to her incapacity. In the petitions involving Andrea and Kayla, there are allegations that Angela has transported the children while she was intoxicated. The amended second petitions filed on 8 July 1996 alleged that Angela became intoxicated on 3 July 1996, causing a nonsecure order to be issued and the children to be removed from her physical custody.

At the adjudicatory and disposition hearing in this matter, the trial court allowed testimony, over the objection of Angela, relating to her consumption of alcohol on 13-14 October 1996 and on 13 December 1996. Angela's probation officer testified, over objection, that he gave her an alco-sensor test on 14 October 1996, and that the test showed a .077 blood alcohol level. A motion by Angela's counsel to strike the testimony was denied. The same probation officer was recalled and testified, again over objection, that on 13 December 1996 he performed two alco-sensor tests on Angela. The result of the first test was .075 and the result of the second was .083. The probation officer also testified that the result of an intoxilyzer test performed by a police officer at the Wilkes County Jail later on 13 December 1996 was .02. Again, Angela objected to the introduction of the intoxilyzer results. The intoxilyzer operator was not present, nor was any foundation laid for the introduction of the results of the test. The trial court made findings based on the above chemical tests and on other post-petition occurrences, and relied on those findings in its conclusion that "[i]t is apparent to the Court that the mother continues to have an alcohol problem."

**[3],[4]** The controlling statute on the admissibility of alco-sensor test results provides only one exception that allows the test results to be introduced. N.C. Gen. Stat. § 20-16.3(d) provides that such results might be introduced as substantive evidence in the following instance: "Negative or low results on the alcohol screening test may be used in factually appropriate cases by the officer, a court, or an administrative agency in determining whether a person's alleged impairment is caused by an impairing substance other than alcohol." Since this exception is not relevant to the instant case, the admissibility of the alco-sensor test results as substantive evidence was error.

The results of an intoxilyzer administered on 13 December 1996 were also introduced over the objection of Angela. To be valid, a chemical analysis such as the intoxilyzer test,

> must be performed in accordance with the provisions of [N.C. Gen. Stat. § 20-139.1(b)]. The chemical analysis must be performed according to methods approved by the Commission for Health Services by an individual possessing a current permit issued by the Department of Environment, Health, and Natural Resources for that type of chemical analysis.

N.C. Gen. Stat. § 20-139.1(b) (1993).

There was testimony that an officer with the Jefferson Police Department administered the intoxilyzer test to Angela at the Wilkes County Jail. Whether the officer who administered the test possessed a valid permit to perform the test, or whether he followed the proper procedure, we do not know. There was no foundation laid for the introduction of the intoxilyzer evidence, and its admission was error. However, in light of the other evidence presented showing Angela had an alcohol problem, we hold that any error that may have been committed by the introduction of the evidence regarding the alco-sensor and intoxilyzer results was not prejudicial.

**[5]** Angela next argues the trial court erred when it admitted evidence of post-petition occurrences. Since the trial court held the adjudication and disposition hearings at the same time, the post-petition occurrences were admissible for the disposition stage. N.C. Gen. Stat. § 7A-640 (1995) provides that

> [t]he dispositional hearing may be informal, and the judge may consider written reports or other evidence concerning the

needs of the juvenile. The juvenile and his parent, guardian, or custodian shall have an opportunity to present evidence, and they may advise the judge concerning the disposition they believe to be in the best interest of the juvenile.

N.C. Gen. Stat. § 7A-516(3) (1995) provides that one of the public policies and purposes is "[t]o develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the child, the strengths and weaknesses of the family, and the protection of the public safety[.]" *See also In re Shue*, 311 N.C. 586, 592-93, 319 S.E.2d 567, 571 (1984).

> Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.

*Id.* at 597, 319 S.E.2d at 574. When considering the best interest of the child, the trial court should consider the changed circumstances of the mother's environment and the type of care provided for the children. *Id.* In the instant case, since the mother's post-petition occurrences reflect on the best interests of the children, they were admissible for the disposition hearing. Even though the evidence would not be admissible for the adjudication portion of the hearing, "[i]n a nonjury trial, if incompetent evidence is admitted and there is no showing that the judge acted on it, the trial court is presumed to have disregarded it." *In re Oghenekevebe*, 123 N.C. App. 434, 438, 473 S.E.2d 393, 397 (1996). Thus, since there was no evidence presented to the contrary, in the instant case we can presume that the trial court disregarded the post-petition occurrences for the adjudication portion of the hearing and only considered the evidence for the disposition stage. Therefore, this assignment of error is overruled.

III.

Finley contends the trial court erred in concluding that Michael was a neglected juvenile because there was insufficient competent evidence to support that conclusion. From the same reasoning supporting our determination that the Powers children are neglected juveniles, we conclude that Michael is also a neglected juvenile. Thus, this assignment of error is overruled.

In summary, the trial court's orders determining that Andrea and Kayla are abused juveniles are affirmed; the order determining that Pearson is an abused juvenile is reversed; and the orders determining that all four children are neglected juveniles are affirmed.

Affirmed in part and reversed in part.

Judges GREENE and LEWIS concur.