[171 N.C. App. 675 (2005)]

IN THE MATTER OF: A.E., J.E., MINOR CHILDREN

No. COA04-406

(Filed 19 July 2005)

**1. Child Abuse and Neglect— neglect—time for appeal—order served after time expired**

A father lost his right to appeal from a child neglect adjudication through no fault of his own where his counsel was not served with the order until after the time for appeal had passed. The Court of Appeals exercised its discretion to treat the matter as a petition for certiorari.

**2. Appeal and Error— preservation of issues—objection at trial—assignments of error**

Arguments regarding changes to and the reliability of testimony in a child neglect adjudication were not properly before the Court of Appeals because the father did not object to the testimony during the hearing and failed to specifically assign error to the testimony or the trial court's reliance on the testimony.

Judge TYSON concurring in part and dissenting in part.

Appeal by respondent from judgment and order entered 5 December 2003 by Judge Rebecca B. Knight in Buncombe County District Court. Heard in the Court of Appeals 2 December 2004.

*Renae S. Alt for petitioner-appellee.*

*Carol Ann Bauer for respondent-appellant.*

*Michael N. Tousey for appellee Guardian ad Litem.*

GEER, Judge.

Respondent father E.E. appeals an order of the trial court adjudicating his children, A.E. and J.E., neglected. E.E. argues in his appellate brief only that the trial court should not have relied upon the testimony of Dr. Robert McDonald. Since E.E. neither objected to that testimony at trial nor assigned error to that testimony or the findings of fact related to that testimony, E.E.'s arguments were not properly preserved for review by this Court. We, therefore, affirm.

IN RE A.E., J.E.

[171 N.C. App. 675 (2005)]

## Timeliness of Appeal

**[1]** As an initial matter, we must address the guardian ad litem's motion to dismiss this appeal. The trial court's adjudication judgment and dispositional order was entered on 5 December 2003. E.E. filed his notice of appeal on 18 December 2003. The guardian ad litem contends that because the notice of appeal was filed more than 10 days after entry of the order, the appeal was untimely.

Even assuming, without deciding, that respondent's notice of appeal was not timely, respondent has established through affidavits that his appeal was lost, if at all, through no fault of his own since his counsel was not served with the order until after the time for appeal had passed. Appellees have submitted no contrary evidence. We, therefore, exercise our discretion under Rule 21(a)(1) of the Rules of Appellate Procedure to treat the father's appeal as a petition for writ of certiorari and we allow that petition.

## Adjudication of Neglect

**[2]** When a child is alleged to be neglected and taken into temporary custody, DSS has the burden of proving neglect by clear, cogent, and convincing evidence. *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986). "Where the trial court sits without a jury and hears the evidence in a neglect adjudication, the facts found by the trial court are binding on an appellate court if supported by clear and convincing competent evidence." *In re McLean*, 135 N.C. App. 387, 394, 521 S.E.2d 121, 125 (1999). Findings of fact that are not challenged on appeal "are deemed supported by competent evidence" and are binding on this Court. *In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).

The respondent father has made only a single assignment of error: "The court erred in finding that the minor children are neglected children by clear, cogent, and convincing evidence." It is well-established that "[a] single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). Since respondent did not specifically assign error to any of the trial court's findings of fact supporting its order, those findings are deemed to be supported by competent evidence and are conclusive on appeal. Those findings establish the following facts.

IN RE A.E., J.E.

[171 N.C. App. 675 (2005)]

A.E. and J.E. lived with their father. In December 2002, the Buncombe County Department of Social Services ("DSS") became involved with the family as a result of reports regarding the father's relationships with women. The father voluntarily placed his children first with one neighbor, then removed them and, four days later, placed them with a second neighbor.

In the course of its investigation, DSS learned that the father had been convicted of taking indecent liberties with a 15-year-old girl and was an untreated sexual offender. Although the father insisted to DSS that he was not untreated, had been cleared by the courts, and had received an assessment for his sex offender status, DSS discovered from his probation officer that the father's probation was revoked due to his failure to seek sexual offender treatment.

On 28 January 2003 and again on 7 February 2003, the father claimed that he had attempted unsuccessfully to schedule a sex offender specific assessment with Dr. Robert McDonald. Dr. McDonald confirmed, however, that he had received no calls from the father. On 13 February 2003, the father refused to sign the "Family Services Case Plan" with DSS, claiming that he did not need any services. On 3 March 2003, the father finally agreed to sign the case plan and "go along" with the results of the sex offender specific assessment.

On 11 March 2003, DSS received the results of the assessment from Dr. McDonald who found the father to be uncooperative and "obviously unreliable" in his recitation of events and facts. Dr. McDonald "recommended that he receive the previously ordered treatment" and that "he not be allowed to be in the presence of post-pubertal females unchaperoned. Failure to comply with treatment is known to be a significant risk factor for repeating similar offenses."

On 18 March 2003, DSS learned that the father had taken the children back into his home although he insisted that his fiancée was always present. On 2 April 2003, a DSS social worker informed the father that he would need to pursue sexual offender treatment. The father, however, refused to undergo treatment. As of 18 June 2003, the father had still not received sex offender specific treatment. On 19 June 2003, DSS filed petitions alleging that the children were neglected, but did not obtain non-secure custody orders.

The trial court conducted an adjudication and dispositional hearing on 27 October 2003. Following that hearing, the court filed an order on 5 December 2003, finding in pertinent part:

21. That on or about May 28, 2003, [the father's] daughter [A.E.], (DOB 3-10-95, age 8), within a few years will be a "post pubertal female" as designated by Dr. McDonald in the Assessment, and [the father] will have unrestricted access to [A.E.]. [The father's] refusal to seek sex offender treatment and his unrestricted access to [A.E.] creates a high risk for these children. The current risk assessment indicates high risk and [the father] is refusing to engage in treatment recommended by Dr. McDonald and the Department.

. . . .

23. That Dr. McDonald testified, and the Court will find as facts, that [the father] was referred for a [sex offender specific] evaluation. He met with him on 5 occasions and held two interviews and performed 3 tests, the MMPI, MPI and MSI. That he received pretty conflicting information from [the father] and found him not reliable. . . . [The father] has never been treated. This is a significant indicator of recidivism and a significant risk. The recommendations for [the father] were a polygraph test, PPE, treatment for 1-2 years, group therapy and individual therapy. [Dr.] McDonald stated that [the father] should not have unsupervised visits with the minor children and not be allowed to be in the company of post pubertal females. After further research and attending a continuing education seminar one week prior to the adjudication, Dr. McDonald recommended that [the father] have no contact with children at all, neither supervised nor unsupervised.

The court acknowledged that the father had been cooperative with DSS with the exception of the refusal to obtain sex offender treatment.

The court concluded "by clear, cogent, and convincing evidence the minor children are neglected children pursuant to N.C.G.S. §7B-101(15) in that the children live in an environment injurious to their welfare in that their father, [E.E.], is an untreated sex offender." In its dispositional order, the court found that it was not in the best interests of the minor children to be in the custody of their father and granted custody to DSS. The court allowed for supervised visitation, but directed that the father complete sex offender specific treatment as a prerequisite to unsupervised visitation. The court also found that "the best plan to achieve a safe, permanent home for the minor children in a reasonable period of time is reunification."

**IN RE A.E., J.E.**

[171 N.C. App. 675 (2005)]

While in his single assignment of error, the father challenged generally the trial court's finding of neglect, the father in his brief argues only that the opinion of Dr. McDonald is not competent evidence to support the trial court's decision. Specifically, the father objects because Dr. McDonald changed his ultimate conclusion between his written report and trial testimony and because the information he used to formulate his trial testimony was not shown to be reliable.

We hold that the arguments regarding changes to and the reliability of Dr. McDonald's opinion are not properly before us because the father (1) failed to object to Dr. McDonald's testimony during the hearing and (2) failed to specifically assign error to that testimony or the trial court's reliance on that testimony. Rule 10(b)(1) of the Rules of Appellate Procedure provides: "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C.R. App. P. 10(b)(1). If an issue has been properly preserved under Rule 10(b), the appellant must then comply with Rule 10(c)(1)'s requirements for assignments of error:

> A listing of assignments of error upon which an appeal is predicated shall be stated at the conclusion of the record on appeal, in short form without argument, and shall be separately numbered. Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. *An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.* Questions made as to several issues or findings relating to one ground of recovery or defense may be combined in one assignment of error, if separate record or transcript references are made.

N.C.R. App. P. 10(c)(1) (emphasis added).

Our review of the transcript in this case reveals that the father failed to object at the hearing to Dr. McDonald's testimony and failed to argue to the trial court that the testimony was incompetent. *See State v. Call*, 353 N.C. 400, 426, 545 S.E.2d 190, 206-07 (holding that an argument that expert's testimony was unreliable was not properly preserved for appellate review when the defendant failed to object at trial), *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548, 122 S. Ct. 628

(2001). Further, since the father's assignment of error does not reference Dr. McDonald's testimony or the findings of fact relating to that testimony, it has not directed the attention of this Court to the error argued in the father's brief, as required by Rule 10(c)(1). *See In re Morales*, 159 N.C. App. 429, 432, 583 S.E.2d 692, 694 (2003) (finding that the argument concerning inadmissible hearsay was not included in an assignment of error and, therefore, was not properly preserved for review). Accordingly, the father's arguments regarding Dr. McDonald's testimony are not properly before this Court.

Our Supreme Court has recently emphasized that once this Court determines that an appeal is flawed for failure to comply with Rule 10(c)(1), this Court is not free to address an issue not raised or argued by the appellant: "It is not the role of the appellate courts, however, to create an appeal for an appellant. As this case illustrates, the Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam). The dissenting opinion in this case, however, seeks to do precisely what the Supreme Court has forbidden. It creates an appeal for the appellant by "address[ing an] issue, not raised or argued by [appellant]." *Id.* None of the cases cited by the dissent and, with the exception of the challenge to Dr. McDonald's testimony, none of the arguments made by the dissent appear in appellant's brief. Just as "the Rules of Appellate Procedure must be consistently applied," *id.*, so too the principles in *Viar* must be consistently applied. Since the sole issue argued by the father is not properly before this Court, we affirm the trial court's decision.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge TYSON concurs in part and dissents in part in separate opinion.

Tyson, Judge concurring in part, dissenting in part.

I concur with the majority's opinion to reach the merits of respondent's appeal. Respondent's right of appeal was lost through late delivery of the order appealed from to his counsel and through no fault of his own.

IN RE A.E., J.E.

[171 N.C. App. 675 (2005)]

The majority's opinion affirms the trial court's adjudication that A.E. and J.E. are neglected. No clear, cogent, and convincing evidence in the record supports the trial court's findings of fact, leaving its conclusions of law unsupported. I respectfully dissent.

## I. Timeliness of Appeal

I concur with the majority's decision to reach the merits of this appeal.

The trial court's adjudication judgment and dispositional order was entered on 5 December 2003, but not delivered to respondent's counsel until 16 December 2003. E.E. filed his notice of appeal on 18 December 2003. The guardian *ad litem's* motion to dismiss respondent's appeal as untimely asserts the notice of appeal was filed more than ten days after entry of the order. However, E.E.'s counsel did not receive the order until after the time for filing a notice of appeal had passed. Upon receiving the order on 16 December 2003, an acceptance of service was signed by counsel for both parties. E.E. promptly filed his notice of appeal two days later on 18 December 2003. Petitioner had the responsibility to file and timely serve the order on respondent. Petitioner's failure to serve an order on respondent until after time for filing a notice of appeal had elapsed cannot be a basis to grant a motion to dismiss respondent's appeal. E.E. should not lose his right to appeal based on petitioner's failure to timely serve the order.

## II. Adjudication of Neglect

Respondent assigns as error the trial court's finding that A.E. and J.E. are neglected children by clear, cogent, and convincing evidence. He cites to the trial court's findings of fact on page forty-five and forty-six, and the conclusions of law and decretal on page forty-eight of the record. He argues his conviction of indecent liberties with an unrelated third party minor and subsequent probation violation of that offense are insufficient to adjudicate his minor children neglected.

Evidence in the record shows E.E. is a single father who has cared for and supported his children for the past seven years. E.E. has a stable job and a stable home. DSS stated in their dispositional report to the court that E.E. "seems to love his children and takes very good care of them." E.E. has provided DSS access to his children and to his home. A.E. and J.E. do not show any signs of neglect.

**IN RE A.E., J.E.**

[171 N.C. App. 675 (2005)]

For a determination of neglect, a court must apply principles pursuant to N.C. Gen. Stat. § 7B-101(15). According to the statute, a neglected juvenile is defined in part as:

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2003).

While the determination of neglect is a fact specific inquiry, "not every act of negligence" or commission of a crime by a parent constitutes "neglect" under the law and results in a "neglected juvenile." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (an anonymous call reporting an unsupervised, naked, two-year-old in her driveway, standing alone, does not constitute neglect). A parent's conduct must be viewed on a case-by-case basis on the totality of the evidence. *Speagle v. Seitz*, 354 N.C. 525, 531, 557 S.E.2d 83, 86 (2001), *cert. denied*, 536 U.S. 923, 153 L. Ed. 2d 778 (2002).

In determining whether neglect has occurred, "the trial judge may consider a parent's complete failure to provide the personal contact, love, and affection that [exists] in the parental relationship." *In re Yocum*, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 (quoting *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982)), *aff'd*, 357 N.C. 568, 597 S.E.2d 674 (2003). In addition, this Court requires "there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline" in order to adjudicate a juvenile neglected. *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotations and citations omitted).

Our Supreme Court's review of the numerous cases where a finding of "neglect" or a "neglected juvenile" was substantiated shows that the alleged neglect constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potential injury to the juvenile. *In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258.

In *Powers v. Powers*, the evidence showed the mother had a severe alcohol problem. 130 N.C. App. 37, 43, 502 S.E.2d 398, 402, *disc. rev. denied*, 349 N.C. 530, 526 S.E.2d 180 (1998). She drove an

IN RE A.E., J.E.

[171 N.C. App. 675 (2005)]

automobile in which her minor children were passengers while impaired due to alcohol. *Id.* She became intoxicated at home to the point of literally falling down and becoming unable to care for her younger children. *Id.* Her drinking also contributed to emotional problems by her older children. *Id.*

A conviction based on acts committed in the home can be sufficient to support a finding of neglect. *In re Blackburn,* 142 N.C. App. 607, 543 S.E.2d 906 (2001). In *In re Blackburn,* the evidence showed: (1) domestic violence between the respondent and her live-in boyfriend; (2) the respondent inappropriately leaving the child in the care of others; (3) the respondent's illegal drug use and distribution of drugs in the presence of the child; (4) an overall history of lawlessness; and (5) the respondent's repeated incarcerations were considered sufficient evidence of neglect. 142 N.C. App. at 610, 543 S.E.2d at 909. None of these factors are shown here.

When confronting the situation where a respondent has been convicted of a crime and continues to be incarcerated, our courts have prohibited termination of parental rights solely on those factors. *Pratt v. Bishop,* 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (The fact that a parent commits a crime which might result in incarceration is insufficient, standing alone, to show a "settled purpose to forego all parental duties."); *In re Yocum,* 158 N.C. App. at 204, 580 S.E.2d at 403 (the respondent was incarcerated but also did nothing to emotionally or financially support and benefit his children); *In re Shermer,* 156 N.C. App. 281, 290-91, 576 S.E.2d 403, 409 (2003) (willfulness not shown under N.C. Gen. Stat. § 7B-1111(7) where the respondent was incarcerated but wrote letters and informed DSS that he did not want his parental rights terminated); *In re Clark,* 151 N.C. App. 286, 565 S.E.2d 245 (2002) (termination of parental rights reversed where the father was incarcerated and evidence was insufficient to find that he was unable to care for his child), *disc. rev. denied,* 356 N.C. 302, 570 S.E.2d 501 (2002); *In re Bradshaw,* 160 N.C. App. 677, 682, 587 S.E.2d 83, 86 (2003) (it is beyond an imprisoned individual's control how many visitations with his child he is allowed); *In re Williams,* 149 N.C. App. 951, 563 S.E.2d 202 (2002) (the father's parental rights were terminated because he was incarcerated *and* he failed to show filial affection for his child).

A court cannot rely "solely" on the commission of a crime and subsequent incarceration in making its determination of neglect. *In re Williamson,* 91 N.C. App. 668, 678, 373 S.E.2d 317, 322 (1988). In *In re Williamson,* the father was convicted of and subsequently

incarcerated for the murder of his child's mother. *Id.* at 671, 373 S.E.2d at 318. Although this Court considered the father's murder conviction and subsequent incarceration, we also considered the father's "actions and circumstances since the murder in drawing the conclusion that respondent neglected and abandoned his child." *Id.* at 678, 373 S.E.2d at 322.

Here, E.E.'s conviction and probation violation does not rise to the level of harm to his children that was shown in the cases cited above. No evidence was presented that E.E. committed any criminal acts in the home or while his children were present. E.E.'s conviction did not result from any criminal or other inappropriate behavior against his own children. No evidence shows respondent ever abused or neglected his children. No evidence was presented that E.E.'s criminal behavior took place in the company of either A.E. or J.E. or that the children were placed in danger during the commission of his crime.

E.E.'s crime arose out of indecent liberties with a fifteen-year-old minor, who was not shown to be a blood or other type of relative. Although indecent liberties is a strict liability offense and respondent's criminal conduct cannot be condoned, none of respondent's actions involved his children. E.E.'s submission to and completion of the sexual offender evaluation satisfied the condition of his probation.

### III.  Dr. Robert D. McDonald, Ph.D.

E.E. underwent a thorough and comprehensive evaluation administered by a psychologist, Dr. Robert D. McDonald ("Dr. McDonald"), who was trained in sex offender treatment. After E.E.'s evaluation, Dr. McDonald stated in his report and assessment that the children were not in danger from E.E. Dr. McDonald opined, "there is not reason to conclude that he is at significant risk to sexually offend his children." Dr. McDonald testified that at age forty-seven, E.E. had reached an age where the chance of re-offending "ha[d] gone down."

A DSS social worker confirmed that DSS was "not able to take from Dr. McDonald's evaluation that A.E. and J.E. were in danger at this point." The children always appeared clean, well kept, healthy, and their hair was usually done very well when DSS visited the home. Multiple home visits by DSS never disclosed any neglect of the children. *See Troxel v. Granville*, 530 U.S. 57, 68-69, 147 L. Ed. 2d 49, 58 (2000) ("[S]o long as a parent adequately cares for his or her children

(i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").

Prior cases show that convictions and incarceration of a parent for more serious crimes are not, standing alone, sufficient to support a finding and conclusion the child is abused or neglected. *In re Williamson*, 91 N.C. App. at 678, 373 S.E.2d at 322.

Without finding that a parent is "unfit" or has engaged in "conduct inconsistent" with the presumption that he will act in the best interest of the child his parental rights must be respected. *Adams v. Tessener*, 141 N.C. App. 64, 72, 539 S.E.2d 324, 330 (2000) (past misconduct which result in convictions and did not include threatened physical violence, illegal substances, or weapons did not overcome the constitutional presumption that the natural parent will act in the best interest of the child) *overruled on other grounds*, 354 N.C. 57, 550 S.E.2d 449 (2001); *see also In re R.T.W.*, 359 N.C. 539, 614 S.E.2d 489 (2005).

Although respondent failed to object to or assign error to Dr. McDonald's contradictory testimony, no evidence, findings, or conclusions support the conclusion that respondent has neglected his children. Clear, cogent, and convincing evidence shows otherwise. The sole basis to support the trial court's order is Dr. McDonald's revised opinion at the hearing, two weeks after he submitted his comprehensive written report, that respondent may pose a risk to his children in the future. Not only does his changed testimony directly contradict his earlier opinions and, despite the fact that respondent sought and completed assessments and treatment, Dr. McDonald suggests that the mere possibility or propensity by respondent of another incident in the future supports a past or present finding of neglect of respondent's own children. While the trial court is free to consider and weigh Dr. McDonald's revised *ad hoc* opinion, his contradictory statements about possible future conduct is not clear, cogent, and convincing evidence to support its conclusion of neglect.

### IV. Conclusion

Review of respondent's appeal is properly before us. E.E.'s conviction did not stem from any activity within the minor children's home, while they were present, nor was taken against his children. Respondent did not place his children in any form of danger. A.E. and

J.E. do not show any signs of neglect or abuse. Respondent gave DSS access to his children and their home. He consented to the children being placed with relatives, and attended and completed Dr. McDonald's specific evaluation over a number of visits.

The trial court's findings of fact that E.E.'s prior conviction of taking indecent liberties and his subsequent failure to schedule sex offender specific evaluation is not clear, cogent, and convincing evidence to support a finding of fact or conclusion of law that his minor children, A.E. and J.E., are neglected. By the time of the hearing, E.E. had submitted to and completed the sex offender specific evaluation. Contradictory evidence of a mere possibility of future conduct from a changed opinion at hearing is insufficient to support a finding of neglect. I respectfully dissent from that portion of the majority's opinion to affirm the trial court's conclusions that respondent neglected A.E. and J.E.