IN THE MATTER OF: J.C., D.C. and K.C.
No. COA08-1339
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Richard A. Penley for petitioner-appellee Onslow County Department of Social Services.
Sofie W. Hosford for respondent-appellant mother.
Pamela Newell Williams for guardian ad litem .
STEELMAN, Judge.
The trial court's adjudication was based upon abuse, and not neglect, as argued by mother on appeal. Under Rules 703 and 705 of the North Carolina Rules of Evidence, the expert psychologist was permitted to testify as to her interviews with the children as the basis of her expert opinion. The findings of fact contested on appeal were supported by clear, cogent, and convincing evidence. The trial court's conclusion of law that the children were abused was supported by its findings of fact.

I. Factual Background and Procedural History
Mother and father are the parents of D.C. and K.C., ages 10 and 9, respectively. J.C., age 15, is father's biological son from a previous relationship. Before legally separating in October 2006, the parents had been married for several years and all three children lived with them. Pursuant to the parent's separation agreement, mother retained physical custody of D.C. and K.C., and father retained physical custody of J.C. Between 27 September 2006 and 24 February 2007, DSS had received three Child Protective Service reports relating to father's anger management issues.
On 30 November 2007, the Onslow County Department of Social Services ("DSS") filed a juvenile petition alleging that J.C., D.C., and K.C. were abused juveniles. The petition alleged that the parents abused the children by having "created or allowed to be created serious emotional damage to the juvenile[s]." The factual bases for the emotional abuse allegation were mother's refusal to allow father visitation with D.C. and K.C., the parents' acknowledgment that the children were having emotional problems requiring counseling, and the fact that the children had not been receiving counseling. The petition further alleged that (1) the children had been placed in the middle of a dysfunctional relationship between their parents, (2) mother had manipulated the children's relationship with their father, and (3) father had a history of inappropriate discipline. DSS requested that it be granted legal custody of the children, but did not request any changes relating to their physical custody. On 21 December 2007, the trial court entered an order giving father DSS-facilitated visitation with D.C. and K.C.
The trial court conducted an adjudicatory and disposition hearing on 7 February 2008. At the hearing, father, a DSS social worker, and an expert psychologist, Jo Ann Garner-McGraw, Ph.D. ("Dr. McGraw"), testified on behalf of DSS. Jennifer Libby, a court advocate for the Onslow County Women's Center, testified on behalf of mother. The trial court entered its written adjudicatory and disposition order on 1 August 2008. In the adjudication portion of the order, the trial court concluded that DSS had proven abuse by clear, cogent, and convincing evidence. In the disposition portion of the order, the trial court granted DSS legal custody of J.C., D.C., and K.C. Mother retained physical custody of D.C. and K.C. and father retained physical custody of J.C. The trial court also ordered that both parents "shall be allowed supervised visitation at [DSS] with the minor children not in their physical custody as allowed by standard DSS visitation policy." Finally, the trial court made several orders related to therapy and counseling for the children and family as a whole. Although father participated in the trial court proceedings, he does not appeal. Mother appeals.

II. Insufficient Allegations
In her first argument, mother contends the trial court erred in concluding the children were neglected on the basis that DSS failed to sufficiently allege neglect in the juvenile petition. We disagree.
Contrary to mother's assertion, the trial court did not adjudicate J.C., D.C., and K.C. as neglected juveniles. The trial court made, in pertinent part, the following conclusions of law: 2. The juvenile[s] [J.C., D.C., and K.C.] are within the juvenile jurisdiction of the Court as abused and neglected.
3. The adjudication of abuse has been proven by clear, cogent and convincing evidence.
(Emphasis added). Conclusion of law number 2 is merely a statement regarding the trial court's jurisdiction over the foregoing action based on the filing of a juvenile complaint alleging abuse and neglect and is not an adjudicatory conclusion. See N.C. Gen. Stat. § 7B-200(a) (2007) (granting a court exclusive jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent). In conclusion number 3, the trial court specifically determined that abuse had been proven by clear, cogent, and convincing evidence and ordered the juveniles be adjudicated as such. The trial court did not make such a conclusion with respect to neglect. We hold the trial court adjudicated the juveniles to be abused and not neglected. This assignment of error is overruled.

III. Expert Testimony
In her second argument, mother contends the trial court erred by admitting the testimony of Dr. McGraw regarding the interviews between her and D.C., K.C., and J.C. Specifically, mother argues these statements are inadmissible hearsay.
Rule 705 of the North Carolina Rules of Evidence provides:
The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination. There shall be no requirement that expert testimony be in response to a hypothetical question.
N.C. Gen. Stat. § 8C-1, Rule 705 (2007). Our Supreme Court has stated, "Rule 705 does not . . . make the bases for an expert's opinion automatically admissible." State v. Baldwin, 330 N.C. 446, 456, 412 S.E.2d 31, 37 (1992). It is within the trial court's discretion whether or not to exclude relevant, but prejudicial evidence. Id. (citing State v. Penley, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986); N.C. Gen. Stat. § 8C-1, Rule 403).
We further note that an expert's opinion may be based upon inadmissible hearsay. See State v. Jones, 322 N.C. 406, 413, 368 S.E.2d 844, 848 (1988) ("[O]ur well established practice has been to admit evidence otherwise inadmissible as hearsay for the purpose of revealing the basis for expert opinion testimony."). N.C. Gen. Stat. § 8C-1, Rule 703 (2007) provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
(Emphasis added). Rule 703 is derived from North Carolina case law decided prior to the enactment of the rule, which reasoned:
[t]estimony as to matters offered to show the basis for a physician's opinion and not for the truth of the matters testified to is not hearsay. "We emphasize again that such testimony is not substantive evidence." Its admissibility does not depend on an exception to the hearsay rule, but on the limited purpose for which it is offered.
State v. Wood, 306 N.C. 510, 516-17, 294 S.E.2d 310, 313 (1982) (internal citation omitted); State v. Huffstetler, 312 N.C. 92, 107, 322 S.E.2d 110, 119-20 (1984), cert. denied, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985); State v. Wade, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979).
At the hearing, Dr. McGraw, a licensed psychologist, was qualified as an expert in the field of child psychology. On 25 July 2007, she conducted a Child Forensic Exam on J.C., D.C., and K.C. at the request of DSS. As part of the forensic exam, Dr. McGraw typically interviews the children, any care givers, and any other pertinent collateral witnesses. During the interviews with the children she uses techniques such as rating scales and connective family drawings to examine their "general emotional functioning from multiple standpoints." When asked during direct examination whether the rating scales test was valid and recognized by professionals in her field, Dr. McGraw responded, "Yes. All of them have reliability and validity testing that's published with the instrument and they're well respected in the field." Dr. McGraw further testified that the connective family drawing is "generally recognized."
As Dr. McGraw began to testify to the details of the children's family life that she had gleaned from her interviews with J.C., D.C., and K.C., mother objected on the basis that the testimony was inadmissible hearsay and mother would not get the chance to cross-examine any of the children. The trial court overruled mother's objection and stated, "I'm going to allow the witness to relate the statements that she considered significant in forming her opinion and that would include the statements of the children that she interviewed." Dr. McGraw then continued to testify to the information she received during the interviews. Based on the forensic evaluation and interviews with the children, Dr. McGraw opined that the emotional manipulation of the children by mother was evident and each child was being emotionally abused.
We conclude that the trial court did not abuse its discretion in admitting Dr. McGraw's testimony into evidence as the purpose of her testimony was to explain the bases for her expert opinions regarding the emotional damage to the children caused by mother and father. See State v. Bullard, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (holding that "the trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony."). This assignment of error is overruled.

IV. Findings of Fact
In her third argument, mother contends that findings of fact numbers 20, 21, 23, 24, and 26 were not supported by the evidence at trial. We disagree.
"When an appellant asserts that an adjudication order of the trial court is unsupported by the evidence, this Court examines the evidence to determine whether there exists clear, cogent and convincing evidence to support the findings." In re McCabe, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations omitted). If competent evidence supports the findings, they are binding on appeal, even if evidence contrary to the findings was presented. Id. (citations omitted). Furthermore, "'[ t]he trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject.'" Id. (quoting In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985)).
Initially, we note that mother failed to take exception to the remaining findings of fact. Thus, finding of fact numbers 1-19, 22, 25, and 27 are presumed to be supported by clear, cogent, and convincing evidence and are, therefore, binding on appeal. See In re J.D.S., 170 N.C. App. 244, 252, 612 S.E.2d 350, 354, cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005). The challenged findings of fact state:
20. The children have not been afforded professional counseling even though the parties acknowledged the need for it in their May 10, 2007 Separation Agreement, and even though an obvious need for such treatment has continued.
21. Both parents have caused or allowed [J.C.], [D.C.], and [K.C.] to be placed in the middle of a long standing dysfunctional and acrimonious relationship between the parents that has existed, at a minimum, from 2006 until the present.
. . .
23. The court finds the testimony of Dr. Garner-McGraw, as well as her conclusions stated above, to be both credible and persuasive. The court adopts each of her findings set for[th] above as its own.
24. Further, as to the mother, the court finds:
a. She deliberately prohibited visitation between the kids and [father.]
b. She acted to maintain, magnify and encourage fears or reservations that [K.C. or D.C.] may have had toward [father] from events long ago that had little real relevance to the present.
c. She intentionally acted to alienate the children from [father] forcing them to choose between him and her.
d. She did not permit positive feelings by the children toward [father]. For example, when [J.C.] told the other children that [father] loved them, [J.C.] was physically removed from her home while the other children were allowed to witness the event.
e. She continued her efforts to alienate the children from the father [and] proceeded without regard to the significant harmful effects her actions had on the children.
f. She has permitted and facilitated the relationship between [J.C.] and the other siblings being severed, without regard to the welfare of the minor children.
. . .
26. While both parents bear a degree of responsibility and fault for the children's current state, the court finds that the mother bears primary responsibility for her active and deliberate conduct that has resulted in the emotional abuse of the minor children.
Finding of fact number 20 is supported by the testimony of father and social worker John Tate. Although the parents had agreed, in May 2007, that the children needed counseling, the children did not regularly attend. Prior to September of 2007, the only therapy the children received was from a non-licensed church counselor. After September 2007, Medicaid was approved and the children started therapy at Carolina Psychological Associates. However, the children missed several appointments. Due to the number of missed appointments, their therapist ultimately required appointments to be scheduled one at a time. Finding of fact number 20 is supported by clear, cogent, and convincing evidence.
Finding of fact number 21 is supported by the testimony of Dr. McGraw, who opined that the children had been subjected to "an extended conflict between the parents to which the children had been made a party."
Finding of fact numbers 23 and 24 are also based on Dr. McGraw's expert testimony and the forensic exam she conducted on D.C., K.C., and J.C. Mother challenges these findings based upon her repeated argument that much of Dr. McGraw's testimony constitutes impermissible hearsay. For the reasons cited in Section III of this opinion, mother's argument is without merit.
Mother argues finding of fact number 26 ignores father's role in "creating emotional turmoil" for the children. Although the trial court found that mother bears primary responsibility for the children's current state, based on the testimony of Dr. McGraw, it is clear the trial court did not ignore father's responsibility in this matter. Finding of fact number 26 expressly states that both parents were responsible for the conditions of the children. Moreover, the trial court made specific findings as to father's role in finding of fact number 25, including that father had used inappropriate discipline in the past and failed to seek relief from a domestic violence protective order, which acted as a significant impediment to the improvement of father's relationship with K.C. and D.C. Finding of fact number 26 is supported by clear, cogent, and convincing evidence. This assignment of error is overruled.

V. Conclusion of Law
In her fourth argument, mother contends that the trial court erred in concluding that J.C., D.C., and K.C. were abused juveniles. We disagree.
An abused juvenile is defined, in pertinent part, as "[a]ny juvenile less than 18 years of age whose parent . . . [c]reates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others[.]" N.C. Gen. Stat. § 7B-101(1)(e) (2007). We have previously held that a "long-standing, acrimonious marital dispute" may provide a basis for serious emotional damage to a juvenile. Powers v. Powers, 130 N.C. App. 37, 41, 502 S.E.2d 398, 400, disc. review denied, 349 N.C. 530, 526 S.E.2d 180 (1998). In Powers, the adjudication of abuse was supported by a psychologist's testimony that two children had diagnosable disorders which, in her opinion, were caused by constant conflict between the parents. Id. at 42, 502 S.E.2d at 401.
In the instant case, we hold that the trial court's findings of fact establish that both parents caused or allowed the children to be placed in the middle of a long-standing dysfunctional and acrimonious relationship between the parents, which caused D.C., K.C., and J.C. serious emotional damage in the form of chronic adjustment disorder and/or depression.
Further, Dr. McGraw testified that both K.C. and D.C. exhibited significant anxiety. D.C. also exhibited trauma reactions and had previously been diagnosed with Post Traumatic Stress Disorder. K.C. had intense emotional responses and presented as very angry. Dr. McGraw testified that K.C. exhibited a personality distortion due to a distressing polarization, which may place K.C. at great risk for further developmental relationship problems. J.C. had developmental differences and was socially immature. Dr. McGraw was also of the opinion that J.C. experienced a disruption to his emotional functioning.
We hold that the trial court's findings of fact support the conclusion that the children were abused pursuant to N.C. Gen. Stat. § 7B-101(1)e. See Powers, 130 N.C. App. at 41, 502 S.E.2d at 400. This assignment of error is overruled.
AFFIRMED.
Judges ELMORE and GEER concur.
Report per Rule 30(e).