635 S.E.2d 11 (2006)
In the Matter of A.B.
No. COA05-1584.
Court of Appeals of North Carolina.
October 3, 2006.
Deputy County Attorney Thomas W. Jordan, Jr. for petitioner-appellee Durham County Department of Social Services; Office of the Guardian ad Litem, by Wendy C. Sotolongo, for appellee Guardian ad Litem.
Public Defender Robert Brown, by Assistant Public Defenders Matthew Ikaika Badua and Whitney B. Fairbanks, for respondent-appellee father.
Duncan B. McCormick, Lillington, for respondent-appellant mother.
*13 HUNTER, Judge.
Respondent-mother appeals from an order entered 2 May 2005 adjudicating her daughter, Amy,[1] neglected. For the reasons stated herein, we affirm the order of the trial court.
Respondent-mother is the mother of Amy, who was born 27 November 2004. Respondent-mother is also the mother of Karen, born 19 November 2002, and Chris, born 3 November 2003. On 8 September 2004, Chris was adjudicated abused and neglected due to serious injuries, including multiple bruises which appeared to be intentionally inflicted, as well as life-threatening trauma to the liver. On the same date, Karen was adjudicated neglected. The trial court determined that both Karen and Chris were at ongoing risk of injury and the children were placed in the legal custody of the Durham County Department of Social Services ("DSS"), with physical placement with the paternal grandparents. The trial court also ordered both respondent-mother and father to have mental health evaluations, receive recommended treatment, obtain and maintain stable employment, and complete a parenting program. Respondent-mother was also ordered to obtain her GED.
The first review hearing following the entry of the order adjudicating Chris abused and neglected and Karen neglected was held 29 November 2004. The trial court again ordered respondent-mother and father to comply with the 8 September 2004 order and receive a mental health evaluation, obtain employment, complete a parenting program, and for respondent-mother to make progress on her GED.
Amy was born on 27 November 2004, but remained hospitalized for some weeks thereafter due to complications at birth. A visit to the home of respondent-mother, conducted by DSS on 10 December 2004, revealed that respondent-mother did not have a crib and did not appear prepared to care for a newborn. DSS held a meeting with respondent-mother and father on 15 December 2004, prior to the discharge of Amy from the hospital, at which the parents agreed to allow DSS to assume custody of Amy and to place her in the physical custody of the paternal grandparents with her siblings. DSS assumed custody, and filed a juvenile petition on 17 December 2004.
Amy's father was found guilty of abusing Chris, and was sentenced and incarcerated subsequent to the filing of the juvenile petition, *14 but prior to the adjudication and dispositional hearing as to Amy.
In an order entered 2 May 2005, the trial court adjudicated Amy neglected. The trial court granted legal custody to DSS with physical placement with the paternal grandparents, supervised visits with respondent-mother, and no visitation with father. Respondent-mother was referred to the Child Support Enforcement Office for establishment of support, and was again ordered to have a mental health evaluation, receive recommended treatment, obtain and maintain stable employment, complete a parenting program, and obtain her GED. Father was also again ordered to have a mental health evaluation and receive recommended treatment, and to complete a parenting program. Respondent-mother appeals from this order. Father does not appeal.

I.
Appellees initially contend that the appeal before this Court is moot. We disagree.
Our Supreme Court has recently determined that a trial court retains "jurisdiction to terminate parental rights during the pendency of a custody order appeal in the same case." In re R.T.W., 359 N.C. 539, 553, 614 S.E.2d 489, 498 (2005).[2] In R.T.W., the respondent-mother appealed a custody review order to this Court. Id. at 541, 614 S.E.2d at 490. While that appeal was pending, DSS filed a motion to terminate the respondent-mother's parental rights and a termination order was entered prior to resolution of the appeal of the custody review order. Id. Following the decision of this Court remanding the custody review order for additional findings of fact, the trial court entered a revised order with additional findings, but opined that the termination order had rendered the matter moot. Id. at 541, 614 S.E.2d at 491. On appeal from the order of termination, our Supreme Court held that the "pending appeal of a custody order does not deprive a trial court of jurisdiction over termination proceedings[,]" id. at 542, 614 S.E.2d at 491, and that entry of such a "termination order necessarily renders the pending appeal moot." Id. at 553, 614 S.E.2d at 498.
However, unlike in the case cited by appellee, In re O.C. & O.B., 171 N.C.App. 457, 615 S.E.2d 391, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005), no termination of parental rights has been entered in the instant case, only a change in guardianship and end to reunification efforts by DSS. In the review order on which appellees rely, dated 22 February 2006, the trial court specifically concludes that "[t]here is a compelling reason not to proceed with termination of parental rights for the children." As the record does not indicate that respondent-mother has relinquished her parental rights, nor have her rights been terminated, the matter before us is not moot and we proceed to review the appeal on its merits.

II.
Respondent-mother first contends that the trial court erred in its finding that the relevant time period for adjudication was from the birth of the child to the filing of the petition. We disagree.
N.C. Gen.Stat. § 7B-802 (2005) states that "[t]he adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition." Id. Unlike in the dispositional stage, where the trial court's primary consideration is the best interest of the child and "`any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court,'" evidence in the adjudicatory hearing is limited to a determination of the items alleged in the petition. Powers v. Powers, 130 N.C.App. 37, 46, 502 S.E.2d 398, 403 (1998) (citation omitted) (stating that post-petition occurrences which reflect on the best interest of the child, while admissible for the dispositional hearing, would not be admissible for adjudication).
*15 Here, the trial court made the following finding: "8. The child was continuously in the hospital from birth up to the time of the filing of the petition. She never physically resided with the parents. The child's birth to the filing of the petition is the relevant time period for the adjudication." (Emphasis added.)
Respondent contends that the trial court should have considered evidence of events which occurred after the filing of the juvenile petition in adjudicating the child neglected. However, the purpose of the adjudication hearing is to adjudicate "the existence or nonexistence of any of the conditions alleged in a petition." N.C.Gen.Stat. § 7B-802. As post-petition evidence is admissible for consideration of the child's best interest in the dispositional hearing, but not an adjudication of neglect, the trial court did not err in finding the time period between the child's birth and the filing of the petition as the relevant period for the adjudication. This assignment of error is overruled.

III.
Respondent-mother next contends in related assignments of error that the trial court erred in its findings of fact and conclusions of law regarding whether Amy was a neglected juvenile.
"In a non-jury adjudication of abuse, neglect, and dependency, `the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings.'" In re K.D., ___ N.C.App. ___, ___, 631 S.E.2d 150, 154 (2006) (citation omitted). "This Court reviews the trial court's conclusions of law to determine whether they are supported by the findings of fact." Id.

a. Finding that minor child was a child living in the home where another child was seriously abused.
Respondent first contends that the trial court erred in finding that Amy was a child living in the home where another child had been abused. We disagree.
N.C. Gen.Stat. § 7B-101(15) (2005) states that a relevant factor in determining whether a juvenile is a neglected juvenile is "whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." Id.
This Court has previously considered in In re McLean the unique situation presented by a petition alleging as grounds for neglect that the child lives in a home with another previously abused child, when DSS has assumed custody prior to an infant's discharge from the hospital following birth. McLean, 135 N.C.App. 387, 521 S.E.2d 121 (1999). In McLean, this Court upheld the trial court's adjudication of neglect of an infant taken into DSS custody while still in the hospital maternity ward, when the infant's sibling had been killed at the age of three and a half months as the result of a willfully inflicted head trauma by the infant's father. Id. at 396, 521 S.E.2d at 126-27. On appeal, the respondent-mother contended the trial court erred in concluding neglect based on the juvenile's living in the same home as a previously abused juvenile, as the infant had not yet been taken into the home. Id. at 394, 521 S.E.2d at 126. The Court noted that the purpose of the statutory language was self-evident as "it allows the trial court to consider the substantial risk of impairment to the remaining children when one child in a home has been subjected to abuse or neglect." Id. The Court concluded in McLean that under the circumstances, the parents' plan to take the juvenile into the same home in which her sibling had died "was a relevant factor which the trial court could consider in making a determination of whether there was a substantial risk of impairment to her." Id. at 395, 521 S.E.2d at 126.
As indicated in McLean, the relevant language in N.C. Gen.Stat. § 7B-101(15) does not require a finding that the child lives in the home in the most literal meaning of that term, that is physically resides in the home at the time of the filing of the petition, when the child is a newborn who has not yet left the hospital but remains in parental care. *16 As stated in McLean, the obvious purpose of the inclusion of this language in the statute was to permit "the trial court to consider the substantial risk of impairment to the remaining children when one child in a home has been subjected to abuse or neglect." Id. at 394, 521 S.E.2d at 126. To hold that a newborn child must be physically placed in the home where another child was abused or neglected would subject the newborn to substantial risk, contrary to the purposes of the statute. Thus a newborn still physically in residence in the hospital may properly be determined to "live" in the home of his or her parents for the purposes of considering under N.C. Gen.Stat. § 7B-101(15) whether a substantial risk of impairment exists to that child.
Here, the trial court found:
9. The father has been determined to have abused [Chris] while living in the home with the child. In that the child was in the care of the parents (although in the hospital from birth up to the filing of the petition) the child [Amy] is a child living in the home where another juvenile has been subjected to abuse and where two children have been subjected to neglect.
Clear and convincing evidence supports the trial court's finding that the child was in the care of the parents although residing in the hospital until DSS's intervention on 15 December 2005, more than two weeks following Amy's birth, and that Amy was a child living in the home of respondent-mother. This assignment of error is overruled.

b. Finding and conclusion that minor child was at risk of neglect.
Respondent-mother next contends the trial court erred in finding and concluding that Amy was at substantial risk of neglect. We disagree.
The trial court found as both a fact and conclusion of law that Amy was at substantial risk of neglect. This determination, however, is more properly designated a conclusion of law. "The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." In re Helms, 127 N.C.App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). "Any determination reached through `logical reasoning from the evidentiary facts' is more properly classified a finding of fact." Id. (citations omitted). The determination that Amy was at substantial risk of neglect is a conclusion of law as it requires the exercise of judgment, and we treat it as such for the purposes of this appeal.
Here, as discussed supra, the trial court made unchallenged findings that Amy's sibling, Chris, was subjected to serious physical abuse. The trial court made further findings that respondent-mother has not taken steps to comply with the interventions from the older children's previous adjudications of neglect. The trial court concluded, "[i]n that [Amy] is a sibling of children who were neglected and a sibling of [Chris] who was abused, there is a substantial risk that the child would be neglected in the care of the mother and/or father." This conclusion is supported by the findings that Amy was a minor child living in a home where serious physical abuse had occurred to another child and that respondent-mother had not taken steps to comply with the trial court's orders regarding the older siblings already adjudicated neglected and abused. The assignment of error is overruled.

c. Conclusion that Amy was neglected.
Respondent-mother finally contends that the trial court erred in its conclusion that Amy was neglected. We disagree.
N.C. Gen.Stat. § 7B-101(15) defines a neglected juvenile as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a *17 home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

Id. (emphasis added). "In addition, the decisions of this Court require `"there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide `proper care, supervision, or discipline'"' in order to adjudicate a juvenile neglected." McLean, 135 N.C.App. at 390, 521 S.E.2d at 123 (citations omitted).
Respondent contends that a conclusion of neglect was not proper as the trial court found that respondent "consented for Durham DSS to assume custody with the child to be placed with [grandfather] and [grandmother]." However, as discussed supra, the trial court made findings supported by clear and convincing evidence that Amy was a minor child living in a home where serious physical abuse had occurred to another child, and that respondent-mother had not taken steps to comply with the trial court's orders regarding the older siblings already adjudicated neglected and abused. Despite respondent's consent after Amy's birth to allow DSS to assume custody of the child, these findings support the trial court's conclusion that a substantial risk of impairment existed for Amy, and that Amy was therefore a neglected child as defined by N.C. Gen.Stat. § 7B-101(15). The assignment of error is overruled.
As the trial court's findings of fact are supported by clear and convincing evidence, and the findings of fact support the conclusions of law, we affirm the order of the trial court.
Affirmed.
Chief Judge MARTIN and Judge McCULLOUGH concur.
NOTES
[1] Names of all minor children have been changed to protect their identity pursuant to N.C.R.App. P. 26(g)(4).
[2] We note that our General Assembly has recently amended N.C. Gen.Stat. § 7B-1003 (2005) to provide that, pending disposition of an appeal, the trial court no longer continues to exercise jurisdiction over termination proceedings. However, this statutory change applies only to petitions filed on or after 1 October 2005 and therefore does not apply to the appeal in this matter.