An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-928
NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

IN THE MATTER OF:                         Sampson County
                                          No. 12 JA 94
C.A.G.


Appeal by respondent from orders entered 21 May 2013 by Judge James L. Moore, Jr. in Sampson County District Court. Heard in the Court of Appeals 10 December 2013.

> *Warrick and Bradshaw, P.A., by Frank L. Bradshaw, for petitioner Sampson County Department of Social Services.*
>
> *Administrative Office of the Courts, by Appellate Counsel Tawanda N. Foster, for guardian ad litem.*
>
> *Leslie Rawls for respondent-grandmother.*


DILLON, Judge.


Respondent-grandmother, custodian of the minor child C.A.G. ("Caleb")[1], appeals from orders adjudicating Caleb an abused and neglected juvenile and designating respondent-grandmother a responsible individual pursuant to N.C. Gen. Stat. § 7B-311(b)(2)(b) (2011).

---

[1]A pseudonym is used to protect the juvenile's privacy.

The Sampson County Department of Social Services ("DSS") filed a juvenile petition on 17 August 2012, alleging that Caleb was abused and neglected and that both respondent-grandmother and Caleb's mother had abused or seriously neglected Caleb such that they were responsible individuals as defined by N.C. Gen. Stat. § 7B-101(18a) (2011).  At the time the petition was filed, Caleb lived with respondent-grandmother, who was granted legal custody of the juvenile by the Cumberland County District Court in January of 2012.  DSS obtained non-secure custody of Caleb on 17 August 2012 and placed him in foster care.

After hearing evidence on 19, 20, and 21 March 2013, the district court entered an order adjudicating Caleb an abused and neglected juvenile on 21 May 2013.  In a separate dispositional order, the court ordered that Caleb remain in DSS custody and that a home study of his maternal uncle be conducted. Respondent-grandmother was denied visitation with the juvenile "unless [she] first completes two consecutive and random negative drug screenings and the Juvenile's therapist recommends such visitations."

Although respondent-grandmother gave notice of appeal from both orders entered 21 May 2013, she confines her appellate arguments to the adjudication order.  In reviewing the district

court's adjudication order under N.C. Gen. Stat. § 7B-807 (2011), we must determine "'(1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact[.]'" *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation omitted). Unchallenged findings of fact are deemed to be supported by the evidence and are binding on appeal. *In re C.B.*, 180 N.C. App. 221, 223, 636 S.E.2d 336, 337 (2006). The court's conclusion that a juvenile is abused or neglected is reviewed *de novo*. *In re N.G.*, 186 N.C. App. 1, 15, 650 S.E.2d 45, 54 (2007).

In her first two arguments, respondent-grandmother challenges sixty of the district court's 276 enumerated findings. Forty-seven of the findings, she contends, merely recite witness testimony and thus do not constitute the affirmative findings required of a court acting as trier of fact. *See In re L.B.*, 184 N.C. App. 442, 450, 646 S.E.2d 411, 415 (2007) (providing that "verbatim recitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge") (citation omitted) (emphasis in original). Respondent-grandmother objects to thirteen additional findings as involving "post-petition" events irrelevant to an

adjudication of the allegations filed by DSS on 17 August 2012. *In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 14 (2006). She further notes that these findings reflect disclosures to, or observations by, psychologist and expert witness Lauren A. Rockwell. While such evidence is admissible to show the basis for an expert's opinion under N.C.R. Evid. 703, respondent-grandmother insists that it cannot be used as substantive evidence of adjudicatory facts. *See State v. Golphin*, 352 N.C. 364, 467, 533 S.E.2d 168, 235 (2000) ("Testimony as to matters offered to show the basis for a physician's opinion and not for the truth of the matters testified to is not hearsay. . . . '[S]uch testimony is not substantive evidence.'") (Citation omitted).

We find respondent-grandmother's exception to these sixty findings to be well taken. Neither the court's findings that a witness "testified" a certain way nor its findings about events that occurred after DSS filed its petition were proper bases for an adjudication of abuse or neglect. *See In re L.B.*, 184 N.C. App. at 450, 646 S.E.2d at 415; *In re A.B.*, 179 N.C. App. at 609, 635 S.E.2d at 14.

Nonetheless, this Court has previously held that "erroneous findings unnecessary to the determination do not constitute

reversible error" where an adjudication is supported by sufficient additional findings grounded in competent evidence. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (citing *In re Beck*, 109 N.C. App. 539, 548, 428 S.E.2d 232, 238 (1993)). The district court's remaining adjudicatory findings, as supported by the testimony at the hearing, amply support its conclusions that Caleb is an abused and neglected juvenile.

The Juvenile Code defines an "abused" juvenile as one "whose parent, guardian, custodian, or caretaker . . . [c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[,]" or "[c]reates or allows to be created serious emotional damage to the juvenile[.]" N.C. Gen. Stat. § 7B-101(1) (2011). A neglected juvenile is one "who does not receive proper care, supervision, or discipline . . .; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2011). To support an adjudication of neglect, the facts must show "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision,

or discipline.'" *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (citations omitted).

The adjudication order includes the following findings of fact concerning Caleb's status at the time DSS filed its petition on 17 August 2012:

> 54. That the Juvenile's attitude and grades began to fall during the [2011-12] school year, becoming very disrespectful to all people around him and was quick to anger.
>
> 55. That the Juvenile would "bow" up at other students and draw back his fists.
>
> 56. That the Juvenile would call other students inappropriate names such as "bitches", "sons of bitches", and "niggers".
>
> 57. That the Juvenile resided with [respondent-grandmother] during the last school year.
>
> . . . .
>
> 60. That [respondent-grandmother] has used inappropriate words such as "nigger," "gay," and "fag[g]ot" during conversations with school officials with the Juvenile present.
>
> 61. That over the course of the last school year the Juvenile developed a bad attendance record and a pattern of tardiness.
>
> . . . .
>
> 74. That the juvenile . . . was very disrespectful, derogatory, and threatening to other students.
>
> 75. That the Juvenile . . . was very

threatening towards African American students and girls.

. . . .

77. That over the course of the last school year the Juvenile would wear the same clothes repeatedly, smelled of urine, and . . . [a teacher] washed his backpack due to the smell of urine.

. . . .

115. That [respondent-grandmother] has used marijuana all her life and she was a frequent user of marijuana.

. . . .

118. That the Respondent Mother moved from the home of [respondent-grandmother] in October of 2011, taking with her three minor children but leaving the Juvenile in the care of [respondent-grandmother].

. . . .

120. That . . . [respondent-grandmother] encouraged the Juvenile to be disrespectful towards [respondent-mother,] telling the Juvenile that the Respondent Mother abandoned him and she encouraged the Juvenile to be physically abusive towards her.

. . . .

128. That [respondent-grandmother] has actually shot at a family member with a firearm.

129. That on one particular occasion [respondent-grandmother] got angry after the death of her husband because she was out of

marijuana and the Juvenile had not done his chores and therefore she grabbed a nine millimeter handgun and pointed it at the Juvenile as the Juvenile pleaded with her not to shoot him and that he loved her.

130. That when the various dogs belonging to [respondent-grandmother] had puppies the puppies would often be kept in the Juvenile's bedroom . . ., leaving feces all over the floor.

. . . .

132. That the Juvenile was required to feed and take care of the animals before attending school.

133. That the Respondent Mother has caught the Juvenile attempting to smoke a marijuana roach belonging to [respondent-grandmother].

. . . .

156. That the Respondent Mother was very "nomadic" over the course of several years and Juvenile was often residing with [respondent-grandmother].

157. That the Respondent Mother was very abusive towards all her children, specifically: physically threw her children, kicked them, and would often curse at them.

. . . .

202. That [respondent-grandmother] threatened that the Juvenile would have to eat dog feces but never forced him to eat any.

. . . .

212. That the Respondent Mother has hit,

kicked, and thrown [Caleb's] siblings and the Juvenile has seen these actions himself.

213. That the Respondent Mother once tried to choke the Juvenile.

. . . .

261. That [respondent-grandmother] has consistently exposed the Juvenile to her anger, name calling, and racial slurs and use of threats of violence.

262. That . . . [respondent-grandmother] has treated the Juvenile [as] more of a spouse than . . . a child relying on him for daily activities and conferring with him on topics that should be reserved for adults.

263. That [respondent-grandmother] has shown a complete ignorance of how her actions negatively impact the Juvenile . . . .

. . . .

265. That the Juvenile has unfairly been placed in a position of feeling like he has to choose between his mother and grandmother, a situation that is exa[cerb]ated by the extreme hatred expressed by each against the other.

. . . .

267. That the violence and threats of violence witnessed by the Juvenile are real, ongoing, continuous, chronic, and injurious to the Juvenile's mental[,] physical, and emotional well-being.

These findings – the substance of which is uncontested – fully support the trial court's ultimate finding and conclusion that

Caleb was an abused juvenile, inasmuch as his parent or custodian exposed him to "a substantial risk of serious physical injury . . . by other than accidental means" and subjected him to "grossly inappropriate procedures or cruel or grossly inappropriate devices" to modify his behavior. *See* N.C. Gen. Stat. § 7B-101(a)(1). Likewise, the findings support the court's determination that Caleb was denied "proper care, supervision, or discipline" and "live[d] in an environment injurious to [his] welfare" such that he was a neglected juvenile as defined by N.C. Gen. Stat. § 7B-101(15).

Respondent-grandmother next claims that the district court erred in adjudicating Caleb abused and neglected based on prior "events that were too remote in time to be relevant." Specifically, she notes that the episode in which she pointed a gun at Caleb occurred in the summer of 2011, approximately one year before DSS filed the petition in this cause. Likewise, the court's finding that respondent-grandmother "actually shot at a family member with a firearm" involved an event occurring in 2008 or 2009. Citing the Juvenile Code's use of "present tense verbs" to define abused and neglected juveniles, respondent-grandmother insists that "the question is not whether abuse or neglect has occurred in the past, but whether it exists at the

time of the petition."[2]    *See* N.C. Gen. Stat. § 7B-101(1) (defining "abused juvenile" as, *inter alia*, one whose parent or custodian "creates or allows to be created a substantial risk of serious physical injury . . ."), (15) (defining "neglected juvenile" as one "who does not receive proper care, supervision or discipline . . .").

"[T]he purpose of the adjudication hearing is to adjudicate 'the existence or nonexistence of any of the conditions alleged in a petition.'"    *In re A.B.*, 179 N.C. App. at 609, 635 S.E.2d at 15 (quoting N.C. Gen. Stat. § 7B-802).    Accordingly, this Court has barred consideration of "post-petition evidence" at the adjudicatory stage of an abuse, neglect, or dependency proceeding under N.C. Gen. Stat. § 7B-802 (2011).    *Id.*    However, we have not applied a limitations or repose period to prior events for the purpose of establishing a juvenile's status as abused or neglected.    *Cf. id.* (concluding that "the trial court did not err in finding the time period between the child's birth and the filing of the petition as the relevant period for the adjudication").    Even in proceedings to terminate parental rights based on neglect – which require a showing of a parent's unfitness *at the time of the termination hearing* – we have

---

[2]Respondent-grandmother cites no case law or additional authority in support of this argument.    *See* N.C.R. App. P. 28(b)(6).

allowed the court to consider evidence of events occurring years before the filing of the termination petition. *See In re McDonald*, 72 N.C. App. 234, 241, 324 S.E.2d 847, 851 (1985) (two years) (citing *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982), *appeal dismissed sub nom. Moore v. Guilford County Dept. of Social Services*, 459 U.S. 1139 (1983) (six years)). "The remoteness of evidence goes to its weight, not to its admissibility." *Id.*

We find no error by the district court. Among the allegations in DSS's petition filed 17 August 2012 was "[t]hat, upon information and belief, the Maternal Grandmother has held a loaded 9mm handgun to Juvenile's head." This incident thus constitutes one of "the conditions alleged in [the] petition." N.C. Gen. Stat. § 7B-802. Evidence that respondent-grandmother had previously fired a gun at other relatives, including respondent-mother, was relevant and admissible to contextualize her assault on Caleb in 2011. Therefore, her argument is overruled.

In her remaining issue on appeal, respondent-grandmother challenges the district court's determination that she was a "responsible individual" under N.C. Gen. Stat. § 7B-311(b)(2)(b). *See* N.C. Gen. Stat. § 7B-101(18a) (defining

responsible individual as "[a] parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile"), (19a) (defining serious neglect) (2011).[3] She offers no independent argument on this issue but merely "incorporate[s] by reference" her preceding arguments that the court's underlying "adjudication is fatally flawed and should be reversed."

"It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005); *see also Foster v. Crandell*, 181 N.C. App. 152, 173, 638 S.E.2d 526, 540 (2007) ("It is not the responsibility of this Court to construct arguments for a party."). Having overruled respondent-grandmother's preceding arguments, we find no basis to overturn her designation as a responsible individual.

The district court's orders are hereby affirmed.

AFFIRMED.

Judges McGEE and McCULLOUGH concur.

Report per Rule 30(e).

---

[3] A determination of "serious neglect" is made under a preponderance of the evidence standard ancillary to an adjudication of neglect. N.C. Gen. Stat. §§ 7B-402(a), -807(a1) (2011).