DIETZ, Judge.
Respondents are the parents of Trevor, Thomas, and Tristan.[1] They appeal from the trial court's order terminating their parental rights. As explained below, the trial court properly determined that grounds existed to terminate both Respondents' parental rights based on neglect and we affirm the trial court's order.
Facts and Procedural History
Respondent-Mother has a history with child protective services dating back to 2008 concerning another child who is not involved in this case. Respondent-Mother and Respondent-Father married on 4 August 2012. The Guilford County Department of Health and Human Services first became involved with the family on 18 February 2016 when it received a report regarding then-newborn Thomas and one-and-a-half-year-old Trevor. A nurse expressed concern that the parents had refused to allow the hospital to administer a blood test on Thomas and that Trevor had remained in his car seat with a soiled diaper, facing the wall, for a long period of time. Respondents eventually consented to the blood test, and the family was discharged from the hospital that day.
Respondents initially did not cooperate with DHHS during its investigation of the report and refused to allow DHHS to see the children. From February 2016 to April 2016, DHHS was not able to make contact with Respondents despite multiple attempts to do so. On 7 April 2016, DHHS filed a petition for obstruction of the juvenile investigation. Prior to the court ruling on the petition, Respondents began to cooperate with DHHS, and DHHS voluntarily dismissed the petition on 22 April 2016. A few weeks later, however, Respondents again refused to cooperate and could not be located by DHHS. DHHS filed a second petition for obstruction of the juvenile investigation on 8 June 2016.
On 21 June 2016, DHHS filed juvenile petitions alleging Trevor to be an abused, neglected, and dependent juvenile and Thomas to be a neglected and dependent juvenile. According to the petitions, DHHS received a new report on 18 June 2016 alleging the children were present during a domestic violence incident between Respondents. Respondent-Mother alleged that Respondent-Father hit her with the wooden handle of a plunger giving her a "busted lip and marks on her arms." Law enforcement responded to the home and assisted Respondent-Mother with moving into a domestic violence shelter. Law enforcement noted that Trevor appeared to be very skinny and was missing chunks of hair from his head. During the investigation of the domestic violence incident, law enforcement learned that Respondent-Mother had received the injuries she claimed were caused by Respondent-Father during an altercation with a woman she believed was having an affair with Respondent-Father.
Law enforcement arrested Respondent-Mother and charged her with making a false police report. DHHS took the children into emergency custody. The social worker observed that Trevor appeared abnormally small for his age and malnourished, and his lips were cracked and had dried blood on them. DHHS arranged for the children to be examined at a nearby hospital. Medical professionals determined that Trevor had a bacterial fungus on his lips; scratches, scars, and possible burns on various parts of his body; a previously fractured right hand and an old hip fracture; a protruding belly due to malnutrition; an abnormally flat spot on the back of his head due to spending long periods of time in the car seat; and patches of hair missing. He was also protein and calorie deficient and fit into clothing sized for a six-month-old. According to the petition, Thomas had no signs of abuse or neglect and was cared for "considerably better" than Trevor. DHHS obtained nonsecure custody of the children on 21 June 2016, and Respondents were denied any visitation.
On 31 December 2016, DHHS received a report that Respondent-Mother had given birth to the family's third child, Tristan. At the time, Respondent-Mother was an inmate at High Point Detention Center. DHHS filed a juvenile petition on 3 January 2017 alleging Tristan to be a neglected and dependent juvenile. DHHS alleged that Respondents had been charged with felony child abuse in relation to their treatment of Trevor and were incarcerated at High Point Detention Center. DHHS further alleged that since the filing of the juvenile petition for Trevor and Thomas, Respondents had "failed to accept responsibility for the various injuries, ailments, treatment, and lack of care" of Trevor and Thomas, and that Respondents' incarceration prevented them from participating in adequate services to address the conditions that led to the children being removed from the home. DHHS obtained nonsecure custody of Tristan and placed him in the same foster home as his two brothers.
On 19 January 2017, the trial court held back-to-back adjudication hearings on the juvenile petitions. In orders entered 17 March 2017, the trial court adjudicated Trevor abused, neglected, and dependent and Thomas and Tristan neglected and dependent. The trial court found that since the filing of the first petition on 21 June 2016, Respondents had failed to accept responsibility for the injuries and lack of care of Trevor and Thomas. In a separate disposition order entered 29 March 2017, the trial court changed the permanent plan to adoption and ceased reunification efforts with Respondents, finding that "the conditions that brought the juveniles into custody with [DHHS] were so horrendous and extremely egregious that it is not possible for the conditions to be corrected within a reasonable period of time." The trial court ordered Respondents to comply with the terms of their service agreements and not to have any contact with the children.
Respondent-Mother pleaded guilty to felony child abuse on 27 February 2017 and was sentenced to 36 months of supervised probation with credit for time served. After her release from incarceration, Respondent-Mother obtained housing at an emergency women's shelter with the assistance of DHHS. She entered a new case plan on 2 March 2017 and attended one domestic violence class on 5 April 2017.
Respondent-Father pleaded guilty to felony child abuse on or about 10 April 2017, and he also was sentenced to 36 months of supervised probation with credit for time served. As a condition of his probation, Respondent-Father was ordered not to have any contact with Respondent-Mother. Shortly after Respondent-Father was released from incarceration, Respondent-Mother left the shelter and went to live with Respondent-Father. In May 2017, Respondents absconded from probation together. From May 2017 through November 2017, Respondents' whereabouts were unknown to their probation officers.
On 21 July 2017, DHHS filed a motion to terminate Respondent-Mother's parental rights based on neglect, willful failure to make reasonable progress, and dependency and to terminate Respondent-Father's parental rights based on neglect, willful failure to make reasonable progress, dependency, and abandonment. See N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (6)-(7).
The trial court held a permanency planning review hearing on 3 August 2017. Neither parent was present and their whereabouts were still unknown. The trial court found that Respondents were not in compliance with their case plans. Respondent-Mother had not addressed her mental health and domestic violence issues and had not obtained housing and employment, while Respondent-Father failed to enter into a complete service agreement upon his release from custody. The court further found that Respondents "continue to deny, or acknowledge, and/or take responsibility for the severe abuse and neglect that the juveniles endured, which resulted in them being removed from the parents' custody."
On 9 November 2017, Respondent-Father was located in the High Point Detention Center after being arrested in Georgia. On 17 November 2017, Respondent-Mother also was located in the High Point Detention Center, and DHHS learned that she was pregnant with the couple's fourth child.
On 5 March 2018, the court held a hearing on the motion to terminate Respondents' parental rights to their three children. On 13 April 2018, the trial court entered an order terminating Respondents' parental rights. The trial court found that all of the alleged grounds existed and that termination of Respondents' parental rights was in the children's best interests. Respondents appealed.
Analysis
In reviewing a trial court's order terminating parental rights, this Court must determine whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law. In re S.N., 194 N.C. App. 142, 146, 669 S.E.2d 55, 58-59 (2008), aff'd per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009).
I. Respondent-Mother's Appeal
Respondent-Mother filed a petition for a writ of certiorari and the guardian ad litem filed a corresponding motion to dismiss Respondent-Mother's appeal, with both filings addressing various defects in Respondents-Mother's notice of appeal. We acknowledge the deficiencies in the notice of appeal but, because Respondent-Mother indicated an unmistakable intent to appeal, we exercise our discretion to allow the petition for a writ of certiorari to ensure that we may review the merits of this appeal. N.C. R. App. P. 21(a)(1).
We begin by addressing Respondent-Mother's challenge to the trial court's termination based on neglect. See N.C. Gen. Stat. § 7B-1111(a)(1). A "neglected juvenile" is one "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15).
Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child at the time of the termination proceeding." In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005). But where, as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." Id. Here, Respondent-Mother challenges Finding of Fact 34, where the trial court found that "[t]he parents have abused and neglected [Trevor] and they have neglected [Thomas] and [Tristan], the neglect continues until this date and there is a likelihood of the repetition of abuse and neglect if the juveniles are returned to the custody of the parents."
Respondent-Mother does not dispute the portion of the finding that she abused and neglected Trevor, and it is now binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). But Respondent-Mother contends that the evidence was insufficient to show she previously neglected Thomas and Tristan. As to Thomas, Respondent-Mother argues that the court's findings show that when Trevor and Thomas were removed from her care, Thomas had "no visible signs of abuse or neglect and ... was cared for considerably better than [Trevor]." As to Tristan, Respondent-Mother argues that she did not have the opportunity to provide care to Tristan because he was removed from her custody shortly after he was born, and that her incarceration at the time of his birth alone could not show neglect.
Respondent-Mother's argument ignores that the trial court found that Thomas and Tristan previously were adjudicated neglected on 19 January 2017. Respondent-Mother does not challenge this finding on appeal. Moreover, the social worker testified that the children were previously adjudicated neglected on 19 January 2017 based on conditions that occurred while they were in Respondent-Mother's care and custody.
More importantly, in determining whether a child is neglected, "it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15). This Court has held that "a newborn still physically in residence in the hospital may properly be determined to 'live' in the home of his or her parents for the purposes of considering under N.C. Gen. Stat. § 7B-101(15) whether a substantial risk of impairment exists to that child." In re A.B. , 179 N.C. App. 605, 611, 635 S.E.2d 11, 16 (2006). Thus, "[a]n adjudication of neglect may be based on conduct occurring before a child's birth." In re C.M. , 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007).
Here, Trevor was adjudicated to be an abused juvenile and the record indicates that this abuse was severe and a serious threat to Trevor's well-being. Indeed, Respondents pleaded guilty to felony child abuse of Trevor and the trial court, in an earlier proceeding, described Trevor's abuse as "horrendous and extremely egregious."
Moreover, in the months before DHHS took Trevor and Thomas into custody, Respondents refused DHHS access to the children, requiring DHHS to file two petitions for obstruction of its investigation. Respondent-Mother also made a false police report of domestic violence between her and Respondent-Father and moved the children into a domestic violence shelter, knowing her injuries were the result of an altercation she had with another woman. Therefore, we hold that the finding that Respondents previously neglected Thomas and Tristan is supported by sufficient evidence in the record.
Respondent-Mother next argues that the evidence was insufficient to support the court's finding that there was a likelihood of repetition of neglect if the children were returned to her custody. She challenges Finding of Fact 38, in which the trial court found that her "attempt to work a case plan after leaving jail consisted of her completing one Crossroads class to address domestic violence." Respondent-Mother argues that she also completed an intake appointment with a psychiatrist on 2 March 2017, a psychiatric assessment on 24 March 2017, and one therapy session on 4 April 2017. But at the termination hearing, a social worker testified that Respondent-Mother had not completed an adequate mental health evaluation and that DHHS offered Respondent-Mother a new case plan when she was released from prison in February 2017 but Respondent-Mother "went to one session and did just a handful of things and absconded." This testimony is sufficient to support Finding of Fact 38.
In addition, Respondent-Mother's argument ignores that she absconded from her probation with Respondent-Father from April 2017 through November 2017, and that she had no contact with DHHS or the children during that time. Respondent-Mother did not participate in any services and made no progress on her case plan while she absconded. Although Respondent-Mother completed some classes during her initial incarceration from 19 July 2016 to 27 February 2017, and did a "handful of things" upon her release, Respondent-Mother did not complete a parenting evaluation or parenting class, did not obtain employment or stable housing, and did not address her mental health issues. Respondent-Mother completed only one education session to address domestic violence issues before absconding with Respondent-Father.
In sum, the trial court's findings, including several unchallenged findings, demonstrate that "neither parent received any treatment or services to address why they abused and starved [Trevor] and left the other juveniles in a neglected state." These findings, in turn, support the court's ultimate finding that there is a likelihood of repetition of neglect if the children were returned to Respondent-Mother's care. See In re: M.J.S.M. , --- N.C. App. ----, ----, 810 S.E.2d 370, 373 (2018) ("A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect.").
Because the trial court properly determined at least one ground existed to terminate Respondent-Mother's parental rights, we need not consider her arguments regarding the remaining grounds found by the trial court. See In re A.L. , 245 N.C. App. 55, 61, 781 S.E.2d 856, 860 (2016). Respondent-Mother does not challenge the trial court's determination that termination of her parental rights was in the children's best interests. Accordingly, we affirm the trial court's order terminating Respondent-Mother's parental rights.
II. Respondent-Father's Appeal
Respondent-Father's counsel has filed a "no-merit" brief on his behalf in which he states that after a conscientious and thorough review of the record on appeal and transcripts, he was unable to identify any issue of merit on which to base an argument for relief. Pursuant to Rule 3.1(d) of the North Carolina Rules of Appellate Procedure, he requests that this Court conduct an independent examination of the case. N.C. R. App. P. 3.1(d).
In accordance with Appellate Rule 3.1(d), counsel wrote Respondent-Father a letter on 5 September 2018 advising him of (1) counsel's inability to find error; (2) counsel's request for this Court to conduct an independent review of the record; and (3) Respondent-Father's right to file his own arguments directly with this Court while the appeal is pending. Counsel attached to the letter a copy of the record, transcript, and no-merit brief. Respondent-Father has not submitted written arguments of his own, and a reasonable period of time for him to have done so has passed.
As this Court has held, the language of Rule 3.1(d) of the Rules of Appellate Procedure "permits but does not require this Court to conduct an independent review of the record" in termination cases where a respondent's counsel filed a no-merit brief and the respondent did not file a separate, pro se brief or other pleading. In re I.B. , --- N.C. App. ----, ----, 822 S.E.2d 472, 474 (2018). In our discretion, we have conducted an independent review of the record (a record with which we are thoroughly familiar, having reviewed it to address Respondent-Mother's arguments). Following that review, we are unable to find any prejudicial error in the trial court's 13 April 2018 order terminating Respondent-Father's parental rights. Accordingly, we affirm the trial court's order terminating Respondent-Father's parental rights.
Conclusion
We affirm the court's order terminating Respondents' parental rights to the children.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.

We use pseudonyms to protect the juveniles' identities.