IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-398

 No. COA21-6

 Filed 3 August 2021

 Durham County, Nos. 11 J 286; 11 J 287

 IN RE: A.D. & A.D.

 Appeal by Respondent from order entered 31 August 2020 by Judge Shamieka

 L. Rhinehart in Durham County District Court. Heard in the Court of Appeals 8

 June 2021.

 Durham County Government, by Senior Assistant County Attorney Bettyna
 Belly Abney, for Durham County Department of Social Services, Petitioner-
 Appellee.

 Erica M. Hicks, for the Guardian ad Litem.

 Edward Eldred, for Respondent.

 WOOD, Judge.

¶1 Respondent appeals an order adjudicating the minor children, Alta1 and

 Ardith, neglected. On appeal, Respondent alleges the trial court erred because its

 finding of fact that the Durham County Department of Social Services (“DSS”)

 substantiated neglect was not supported by clear and convincing evidence.

 1 See N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the
 juveniles).
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 Respondent further contends the trial court erred in concluding Alta and Ardith were

 neglected because this conclusion of law was not supported by its findings of fact.

 After careful review of the record and applicable law, we affirm the decision of the

 trial court.

 I. Background

¶2 In 2012, Respondent was granted custody of Alta, Ardith, and their brother.2

 The children came into Respondent’s care because their biological mother,

 Respondent’s sister, struggled with substance abuse. On September 8, 2018, DSS

 received a report regarding the family, alleging neglect due to improper discipline.

 Specifically, the report alleged Respondent smacked Alta in the face, resulting in a

 nosebleed. Respondent admitted she swung at Alta, but claimed she only intended

 to hit her on the shoulder. Ardith also reported that she was “whooped with a belt”

 on the back of her legs, resulting in bruising.

¶3 In December 2018, DSS closed its investigation, marking the case as “Services

 Needed” rather than “Substantiated” on its case decision summary. On December 7,

 2018, DSS determined services were needed for the family and transferred the case

 to an in-home services case worker for ongoing case management. At that time, DSS

 recommended counseling services for Respondent, Alta, and Ardith, and

 2 Alta and Ardith’s brother is not subject to this appeal.
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 recommended that Respondent participate in parenting classes.

¶4 On January 17, 2019, DSS attempted to provide an In-Home Services

 Agreement (the “Agreement”) to Respondent and explain the process for completing

 the requirements, but Respondent refused to sign the Agreement. The social worker

 made multiple subsequent visits to Respondent’s home, and Respondent continued to

 refuse to sign the Agreement. The social worker testified that Respondent was angry

 with the results of DSS’s investigation and felt it was unfair.

¶5 That same month, Respondent, Alta, and Ardith each completed a

 comprehensive clinical assessment through Yelverton Enrichment Services

 (“Yelverton”). According to Ardith’s comprehensive clinical assessment, she was

 distressed over the separation from her biological mother. Ardith was sad, angry,

 desired to be left alone, and suffered from nightmares. She also displayed

 troublesome behavior, such as hitting and calling children names at school and

 hitting and screaming at others two to three times a week at school and once a week

 at home. According to Alta’s comprehensive clinical assessment, Alta expressed that

 she felt abandoned by her biological mom, experienced sadness, desired to be alone,

 and had flashbacks of living with her mother. She felt helpless and hopeless because

 she constantly thought about the past, causing her to be distracted by worry and

 memories. Alta reported that sometimes she forced herself to eat when she did not

 feel like eating.
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

¶6 During Respondent’s comprehensive clinical assessment, Respondent reported

 feeling stressed and overwhelmed due to the attention Alta and Ardith required and

 because she internalized the grief over the passing of her grandmother. The social

 worker reported Respondent had various emotional outbursts while working with

 DSS. According to the social worker, Respondent experienced crying spells during

 their meetings, was verbally aggressive, and yelled at the social worker and her

 supervisor.

¶7 The results of the comprehensive clinical assessments led to Alta and Ardith

 being diagnosed with adjustment disorder with mixed anxiety and depressed mood.

 Respondent was diagnosed with major depressive disorder, moderate, single episode,

 with anxious disorder. Yelverton recommended Respondent, Alta, and Ardith

 participate in outpatient therapy to address their issues and develop skills to manage

 their symptoms.

¶8 Despite the recommendations she received from Yelverton and DSS,

 Respondent refused to schedule therapy appointments for herself, Alta, or Ardith.

 On January 18, 2019, Alta began receiving therapy in her charter school from a

 Yelverton therapist. Alta met with the Yelverton therapist once a week through the

 end of the school year in June 2019 but did not receive any further mental health

 treatment thereafter.

¶9 Yelverton was not able to provide services to Ardith because she attended a
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 public school. Respondent was uncomfortable having the therapist meet Ardith in

 her home and did not allow the therapist to provide services to Ardith in the

 residence. Yelverton was unable to schedule appointments on the weekend when

 Respondent reported she had availability, so Ardith was not able to participate in

 services.

¶ 10 Respondent attended one therapy session in June 2019 but failed to attend the

 second scheduled appointment and did not reschedule. The therapist attempted to

 set up in-home sessions, but Respondent refused to allow the therapist into her home.

 DSS offered to assist Respondent with transportation to therapy sessions, but

 Respondent refused. Respondent refused to participate in parenting classes,

 intensive in-home services, peer support, home and school visits, case management

 services, and attempted social worker counseling and guidance as recommended by

 DSS. Respondent prevented the social worker from seeing the children, only allowing

 access three times during the first four months of in-home services, and once allowing

 the social worker to see the children through the door.

¶ 11 On July 5, 2019, DSS filed a petition alleging Alta, Ardith, and their younger

 brother were dependent and neglected juveniles. DSS filed the petition “[d]ue to

 [Respondent]’s resistance to engage herself or the children in any services.” At the

 time of the filing of the petition, Alta was no longer receiving therapy and neither

 Respondent nor Ardith received treatment throughout the case.
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

¶ 12 By the end of 2019, Respondent, Alta, and Ardith were attending individual

 counseling sessions. This mental health treatment continued until the disposition

 hearing. However, DSS was unable to follow up on their engagement in therapy

 because Respondent refused to provide DSS access to their therapy records.

¶ 13 The adjudication hearing was held over four days between February and May

 2020. On May 28, 2020, the trial court adjudicated Alta and Ardith neglected due to

 improper care, supervision, or discipline and living in an environment injurious to

 their welfare. The trial court proceeded to disposition that same day, but there was

 insufficient court time for the hearing. Thus, the disposition hearing was rescheduled

 by the trial court for June 18, 2020. Respondent was ordered to allow DSS to have at

 least two face-to-face visits with the children before June 17, 2020. Respondent

 complied with the limited order. However, Respondent continued to be resistant in

 allowing DSS access to the children twice a month pursuant to North Carolina

 Department of Health and Human Services (“NC DHHS”) In-Home Policies, Protocol,

 and Guidance for moderate-risk cases.

¶ 14 On August 31, 2020, the trial court entered its written adjudication and

 disposition order, concluding Alta and Ardith were neglected juveniles because they

 did not receive proper care, supervision, or discipline from Respondent, and they lived

 in an environment injurious to their welfare. Respondent retained legal custody of

 the children subject to a court-ordered protection plan and her compliance with in-
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 home services. On September 17, 2020, Respondent timely filed notice of appeal.

 II. Standards of Review

¶ 15 During the adjudication hearing, the trial court must determine whether the

 conditions alleged in the petition exist. See In re A.B., 179 N.C. App. 605, 609, 635

 S.E.2d 11, 14 (2006) (citing Powers v. Powers, 130 N.C. App. 37, 46, 502 S.E.2d 398,

 403-04 (1998)). Evidence of events after the petition is filed is irrelevant to the

 determination of whether the child is neglected. See id. at 605, 635 S.E.2d at 14-15.

 The trial court resolves any conflicts in the evidence, acting as “both judge and jury.”

 In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996) (citation

 omitted). Accordingly, “appellate courts are bound by the trial courts’ findings of fact

 where there is some evidence to support those findings, even though the evidence

 might sustain findings to the contrary.” In re Montgomery, 311 N.C. 101, 110-11, 316

 S.E.2d 246, 252-53 (1984) (citation omitted).

¶ 16 Our review of the trial court’s adjudication and disposition order “entails a

 determination of (1) whether the findings of fact are supported by clear and

 convincing evidence, and (2) whether the legal conclusions are supported by the

 findings of fact.” In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)

 (internal quotation marks and citations omitted). “Clear and convincing evidence is

 evidence which should fully convince.” In re S.R.J.T., ___ N.C. App. ___, 2021-

 NCCOA-94, ¶ 5 (citation omitted). “[W]hether a trial court’s findings of fact support
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 its conclusions of law is reviewed de novo.” In re J.S., 374 N.C. 811, 814, 845 S.E.2d

 66, 71 (2020) (citation omitted).

 III. Analysis

¶ 17 Respondent raises two arguments on appeal. Each will be addressed in turn.

 A. Finding of Fact No. 24

¶ 18 Respondent first contends finding of fact 24 is not supported by competent

 evidence because DSS failed to substantiate neglect for inappropriate discipline.

 Respondent argues this finding is not supported because the initial case decision

 summary from December 2018 indicated “Services Needed” rather than

 “Substantiated.” Finding of fact 24 states,

 As a result of the CPS investigation . . . [DSS] substantiated
 neglect for inappropriate discipline. [DSS] had concerns
 regarding the mental health needs of [Alta, Ardith,] and
 [Respondent]. Later, this matter was transferred to
 [DSS’s] In-Home Services Unit on or about January 17,
 2019. (emphasis added).

¶ 19 A neglected juvenile is one “whose parent . . . does not provide proper care,

 supervision, or discipline; . . . or who lives in an environment injurious to the

 juvenile’s welfare.” N.C. Gen. Stat. § 7B-101(15) (2021). To support an adjudication

 of neglect, there must be evidence of some type of emotional, physical or mental harm,

 or a substantial risk of such harm, from the neglect; however, there is no requirement

 that the court make a specific finding where the facts support a finding of harm or

 substantial risk of harm. See In re Safriet, 112 N.C. App. 747, 753, 436 S.E.2d 898,
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 902 (1993). The trial court is granted “some discretion in determining whether

 children are at risk for a particular kind of harm given their age and the environment

 in which they reside.” In re C.M., 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007)

 (internal quotation marks and citation omitted).

¶ 20 In this case, the evidence tended to show that Alta and Ardith were at a

 substantial risk of harm. See In re T.R.T., 225 N.C. App. 567, 571, 737 S.E.2d 823,

 827 (2013). During DSS’s investigation into the September 18, 2018 report, Alta told

 the social worker that Respondent hit her in the face, causing her nose to bleed. The

 social worker also testified about that same investigation, “I confirmed the

 allegations and [Ardith] was saying that she had got in trouble and that she had got

 a spanking during that time and she was hit. And [Ardith] showed me a couple of

 marks on her.” Moreover, Respondent admitted to using physical discipline with the

 children, further substantiating the allegations of neglect for improper discipline, but

 failed to attend parenting classes or therapy that could help her address the use of

 improper discipline.

¶ 21 The evidence also showed the girls were at risk of continued emotional and

 mental harm. The results of Alta and Ardith’s comprehensive clinical assessments

 and their documented behavioral issues demonstrated they needed mental health

 treatment for their health and well-being. Specifically, Alta reported feeling hopeless

 and having difficulty eating, while Ardith stated she was frequently anxious. The
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 social worker testified to Respondent’s “resistance to engage herself or the children

 in any services” such that at the filing of the petition, Alta was no longer receiving

 therapy and neither Respondent nor Ardith received treatment throughout the case.

 Thus, the evidence tends to show Respondent denied the girls necessary treatment

 for their mental and emotional well-being and refused to attend therapy to address

 her own mental health issues that contributed to her stress and feelings of frustration

 regarding the children. This Court has previously upheld a finding of neglect in cases

 where parents specifically failed to follow through with required therapy for

 themselves and treatment for their children. See In re A.J.M., 177 N.C. App. 745,

 751, 630 S.E.2d 33, 36 (2006); see also In re Thompson, 64 N.C. App. 95, 100-01, 306

 S.E.2d 792, 795-96 (1983).

¶ 22 Here, Respondent’s failure to attend parenting classes and seek mental health

 treatment for herself and the children demonstrates that she did not address the

 conditions that led to the filing of the petition and the ultimate adjudication of

 neglect. See A.J.M., 177 N.C. App. at 751, 630 S.E.2d at 36. “A parent’s failure to

 make progress in completing a case plan is indicative of a likelihood of future neglect.”

 In re C.M.P., 254 N.C. App. 647, 655, 803 S.E.2d 853, 859 (2017) (citation omitted).

 Respondent’s use of improper discipline on Alta and Ardith, and her failure to satisfy

 DSS’s recommendations to address the root cause, resulted in concerns for Alta and

 Ardith’s safety. See id. DSS case plans are designed to address the conditions that
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 DSS has identified as endangering the well-being of the children. See In re Brim, 139

 N.C. App. 733, 742-43, 535 S.E.2d 367, 372 (2000).

¶ 23 This Court has upheld a trial court’s finding that a mother’s failure to

 cooperate with DSS put the child at risk of substantial harm where the mother

 refused to participate in services, including parenting classes and mental health

 therapy. In re T.R.T., 225 N.C. App. at 572, 737 S.E.2d at 827. Such evidence in light

 of a prior adjudication of neglect supported the trial court’s finding of neglect. Id.

 (citing In re C.M., 183 N.C. App. at 212, 644 S.E.2d at 593). Respondent admitted to

 hitting Alta and to using physical discipline, including hitting Ardith with a belt and

 leaving bruises and marks. Thus, Respondent’s use of improper discipline and refusal

 to complete the requirements intended to address this issue supports the trial court’s

 finding of fact.

¶ 24 Respondent further contends finding of fact 24 was not supported by competent

 evidence because it also states this case was transferred to in-home services “on or

 about January 17, 2019,” instead of on December 7, 2018.

¶ 25 While the North Carolina Child Protective Services (“CPS”) Assessment

 Documentation Tool provided in the record on appeal reveals that DSS transferred

 this case to in-home services on December 7, 2018, rather than on January 17, 2019,

 as is stated in finding of fact 24, we do not find that this typographical error undercuts

 the clear and convincing evidence of the minor children’s neglect in this case.
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 Accordingly, we affirm the trial court on this issue.

 B. Neglected Conclusion of Law

¶ 26 Next, Respondent contends the trial court’s conclusion of law that Alta and

 Ardith were neglected is not supported by the evidence because DSS did not

 substantiate neglect in December 2018; Respondent and the girls received some

 services for seven months; and there were no new reports of maltreatment between

 the time of the first allegation and the time of the adjudication hearing.

¶ 27 DSS has the duty to screen reports of suspected child abuse, neglect, or

 dependency to determine whether the facts reported, if true, meet the statutory

 definitions of abuse, neglect, or dependency. N.C. Gen. Stat. § 7B-302 (2021); N.C.

 Gen. Stat. § 7B-403 (2021). If they do, DSS must determine what type of assessment

 response is appropriate. N.C. Gen. Stat. § 7B-302(a). A “family assessment” response

 is used for reports meeting the statutory definitions of neglect and dependency and

 applies a family-centered approach that focuses on the strengths and needs of the

 family as well as the child’s alleged condition. N.C. Gen Stat. § 7B-101(11b) (2021).

 At the end of an assessment, DSS determines or substantiates whether abuse,

 neglect, serious neglect, or dependency occurred. If DSS substantiates a report or

 determines that the family needs services, DSS must provide protective services and

 may file a petition with or without requesting a nonsecure custody order removing

 the child from the home immediately. N.C. Gen. Stat. § 7B-302(c)-(d); N.C. Gen. Stat.
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 § 108A-14(a)(11) (2021).

¶ 28 After substantiation or a finding that a family requires services, DSS is

 responsible for determining what services would help the family to meet the child’s

 basic needs, keep the child safe, and prevent future harm. DSS must determine and

 arrange for the most appropriate services, focusing on the child’s safety. If a parent,

 guardian, custodian, or caretaker refuses to accept the protective services arranged

 or provided by DSS, then DSS is required to file a petition to protect the juvenile(s).

 N.C. Gen. Stat. § 7B-302(c).

¶ 29 In this case, Respondent improperly assumes that DSS can only proceed with

 filing a juvenile petition if there is a case decision of substantiation, not merely

 services needed. A determination of substantiated and services needed are treated

 similarly under DSS policy. We note the policies and protocols that guide and govern

 in-home services, “In-Home Services Policy, Protocol and Guidance,” (IHS Policy), are

 found in North Carolina’s Child Welfare Manual published by the North Carolina

 Department of Health and Human Services. CPS In-Home Services are legally

 mandated for a substantiation of neglect or determination of services needed. See N.C.

 Dep’t of Health & Hum. Servs., In-Home Services Policy, Protocol, and Guidance, 1,

 3 (May 2020), https://policies.ncdhhs.gov/divisional/social-services/child-

 welfare/policy-manuals/in-home_manual.pdf. Further, throughout the IHS Policy,

 the two terms are used in this manner, and various measures are required following
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 a substantiation and a determination that services are needed. Id. at 1, 3-4. Thus,

 “Services Needed” is not the same as “unsubstantiated.”

¶ 30 Here, DSS made a case decision of “Services Needed” based on Respondent’s

 use of improper discipline and the mental health needs of the family. DSS’s

 determination was supported by Alta’s descriptions of Respondent leaving marks on

 her legs from being whipped with a belt several times and Respondent yelling when

 the children did something wrong. Further, Ardith reported to the social worker that

 Respondent sometimes smacked the children on the back of their heads, on their legs,

 and on the sides of their faces with her hand. Such allegations were confirmed by

 Respondent who admitted she used such physical discipline with the children at the

 time.

¶ 31 Although Respondent was willing to engage the children and herself in mental

 health treatment while DSS was investigating the report, there is sufficient evidence

 in this case to support the girls were neglected at the time of the filing of DSS’s

 petition. Respondent’s refusal to follow the recommendations from Yelverton’s

 comprehensive clinical assessments, refusal to complete any parenting programs,

 and failure to comply with in-home services is sufficient evidence to support a finding

 of neglect. Respondent testified she failed to seek outpatient therapy for herself and

 the girls before the petition was filed or the adjudication hearing. Where parents or

 caretakers did not cooperate with DSS or ensure their children received proper
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 treatment, this Court has upheld the trial court’s finding of neglect. See In re T.R.T.,

 225 N.C. App. at 571, 737 S.E.2d at 827 (upholding a trial court’s finding that a

 mother’s failure to cooperate with DSS put her child at risk of substantial harm where

 the mother refused to participate in parenting classes and mental health therapy); In

 re C.M., 183 N.C. App. at 212, 644 S.E.2d at 593 (holding that the findings relating

 to the prior adjudication of neglect, subsequent termination of parental rights as to

 another child, and the parents’ failure to attend mental health treatment and

 vocational rehabilitation supported the finding that their child was neglected); In re

 Thompson, 64 N.C. App. at 101, 306 S.E.2d at 795-96 (holding that the mother’s

 failure to seek treatment for her daughter to determine if she was developing

 normally supported the conclusion of neglect by failure to provide necessary medical

 care); In re Huber, 57 N.C. App. 453, 458, 291 S.E.2d 916, 919 (1982) (affirmed the

 finding of neglect where the mother failed to ensure her child received the necessary

 medical and remedial care she needed, reasoning that “[to] deprive a child of the

 opportunity for normal growth and development is perhaps the greatest neglect a

 parent can impose upon a child”). Thus, based on the evidence and consistent with

 our precedent, we hold the trial court’s conclusion that Alta and Ardith were

 neglected juveniles is supported by its findings of fact.

¶ 32 We note that “erroneous findings unnecessary to the determination [of neglect]

 do not constitute reversible error where an adjudication is supported by sufficient
 IN RE: A.D. & A.D.

 2021-NCCOA-398

 Opinion of the Court

 additional findings grounded in clear and convincing evidence.” In re C.B., 245 N.C.

 App. 197, 199, 783 S.E.2d 206, 208-09 (2016) (internal quotation marks omitted)

 (quoting In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006)). Here, the

 trial court’s typographical error in using the phrase “substantiated neglect” instead

 of “services needed” in finding of fact 24 has no practical effect on the determination

 that Alta and Ardith were neglected juveniles. Our review revealed the two phrases

 are treated similarly under DSS policy and that DSS was required under N.C. Gen.

 Stat. § 7B-302(c) to file a petition after determining the family needed services and

 Respondent refused to accept or participate in those services. N.C. Gen. Stat. § 7B-

 302(c).

 IV. Conclusion

¶ 33 Therefore, we hold there was sufficient and clear and convincing evidence the

 children were neglected at the time of the filing of the petition. Accordingly, we affirm

 the trial court’s adjudication and disposition order.

 AFFIRMED.

 Chief Judge STROUD and Judge COLLINS concur.